[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 352 
This is an appeal from a judgment of the Court of the Judiciary finding that Judge Billy Joe Sheffield, Circuit Judge of the Twentieth Judicial Circuit of Alabama, violated Canons 2 A, 2 B, 3 A (6), and 3 C (1) of the Alabama Canons of Judicial Ethics. We affirm in part and reverse in part.
 FACTS
On September 29, 1983, the following letter to the editor appeared in The Abbeville Herald:
"Dear Editor:
 "As a concerned mother of three children in Henry County, Alabama, I feel I must try to tell all the women in Henry and Houston Counties the type judicial system our counties have.
 "We now have a circuit judge who finds justice in letting a man who has worked for seventeen years running a very prosperous clothing business, supporting himself, a wife and three children all of a sudden declare himself penniless and disabled to work.
 "He feels justified in coming into office and changing another judge's decision. He says that a man can sign all of his resources over to another person, let that person handle his finances, give him money as he needs or wants it and not be liable of supporting his family.
 "How can a judge find justice in this? Would he do this to his family and feel justified? Would he let his children sit down to a table with barely nothing to eat, try to take a bath and find the water has been cut off, go to the phone and find no dial tone because it also has been cut off? Would he also find justice in his child dropping out of school his senior year to get a job to try to support a family whose mother has cancer and can't work? If one man can commit such a crime and get away with it, why can't all men?
 "Every woman in Henry and Houston Counties had better sit up and take notice of this situation. The next time it could be one of you.
"Connie Cox"
The letter referred to Circuit Judge Billy Joe Sheffield's ruling in a habeas corpus proceeding in which the petitioner Snead, having been jailed for failure to make child support and maintenance payments, was released from confinement. The author of the letter, Ms. Connie Cox, was a witness in the previous Snead divorce and child custody case. It is conceded that the letter, in certain material aspects, is factually incorrect.
After reading the published letter, Judge Sheffield found, and was influenced by, the following language from a publication entitled Bench Manual for Circuit Judges inAlabama:
 "The constructive or indirect contempt is an act of disobedience or defiance committed, not in the presence of the court, but at a distance from the court. Indirect *Page 353 
contempt has been generally characterized as the act of disobeying or resisting process, intimidating the witness out of the presence of the court, or by the making of any false or grossly inaccurate report of any proceeding while the same is pending before the court. . . .
 "The publication of a disrespectful article has been held to be constructive contempt."
The manual did not mention any limitation upon a court's authority to punish for indirect contempt. Specifically, the "clear and present danger" doctrine was not mentioned. Thus, on September 30, 1983, Judge Sheffield issued an order directing Ms. Cox to show cause why she should not be held in contempt of court, and he set October 6, 1983, as the date for hearing the matter.
The evening before the hearing, Judge Sheffield received a telephone call from Danny Lewis, the state editor of the DothanEagle newspaper. Mr. Lewis identified himself to the judge and asked him certain questions about the pending contempt hearing. The judge explained to Mr. Lewis the meaning of constructive or indirect contempt and the possible sanctions for criminal and civil contempt. During the conversation, the judge also said, "The contempt speaks for itself. . . . I think it's pretty obvious who she is talking about. Everybody in Abbeville knows what she is talking about. Just because she doesn't name any names doesn't lessen what's been done." Furthermore, the judge suggested to Mr. Lewis that "the article [had] false information in it," and that Mr. Lewis "might want to look at the libel laws; call an attorney."
At the contempt hearing the next morning, Ms. Cox's lawyer made a motion that Judge Sheffield recuse himself. The judge denied the motion. Following a factual inquiry, the judge asked defense counsel if Ms. Cox wished to submit any testimony in defense. She offered none. The judge found Ms. Cox in contempt of court and fined her $100. The judge denied defense counsel's motion to reconsider.
On the same morning of the hearing, an article written by Mr. Lewis and entitled "Woman Hauled to Court Over Letter to Editor," appeared in the morning edition of the Dothan Eagle.
The article was based on Mr. Lewis's conversation with Judge Sheffield the night before and contained several of Judge Sheffield's statements. Although the newspaper was distributed at 6:00 a.m., neither Judge Sheffield nor Ms. Cox's lawyer had read or was aware of the article at the time the contempt hearing occurred.
On October 7, the day after the hearing, Judge Sheffield reconsidered ex mero motu his contempt ruling. After researching the law of contempt and the "clear and present danger" doctrine, the judge decided he had been in error in holding Ms. Cox in contempt. He drafted an order rescinding his contempt order and immediately notified Ms. Cox and her lawyer.
Judge Sheffield's erroneous legal ruling received considerable media publicity. At the contempt hearing itself, approximately fifty people were present in the courtroom. Adverse editorials, articles, and at least one cartoon appeared in such varied newspapers as The Montgomery Advertiser, The NewYork Times, The Birmingham News, The Bakersfield Californian, and The Syracuse Post Standard. Also, newspapers around Alabama received letters from all across the country criticizing the judge's ruling and related actions.
On November 28, 1983, the Judicial Inquiry Commission filed a complaint against Judge Sheffield. The complaint alleged twelve violations of the Alabama Canons of Judicial Ethics. For purposes of this appeal, the relevant alleged violations were:
 Charge 1 — Failure to abstain from public comment about a pending or impending proceeding in his court, Canon 3A (6);
 Charge 3 — Failure to disqualify himself where his impartiality might reasonably be questioned, Canon 3C (1);
 Charge 11 — Failure to conduct himself at all times in a manner that promotes *Page 354 
public confidence in the integrity and impartiality of the judiciary, Canon 2A; and
 Charge 12 — Failure to avoid conduct prejudicial to the administration of justice which brings the judicial office into disrepute, Canon 2B.
After a trial on the merits, the Court of the Judiciary issued the following order:
 "This case having been this day heard in open Court and submitted for judgment upon the testimony, admissions and exhibits, and after consideration of same, the Court finds as follows:
 "Mrs. Connie Cox was cited by Judge Billy Joe Sheffield for contempt of Court after publication of her letter to the editor of a local newspaper. Her letter criticizing the court appears to have been unfounded and factually incorrect. However, Judge Sheffield had no legal justification to charge her with contempt.
 "Judge Sheffield improperly made an intemperate response to the letter of Mrs. Cox. His reaction was ill-advised and unjustified. He improperly initiated contempt proceedings which were scheduled to be heard before him.
 "Canon 3A[6] of the Canons of Judicial Ethics requires that he `should abstain from public comment about a pending proceeding,' but he did in fact make comment to a journalist which became public.
 "The Judge's public comment concerning the pending matter and the manner in which he proceeded therein reasonably subjected his impartiality to question (3C (1)) and tended to undermine public confidence in the integrity and impartiality of the Judiciary (Canon 2A) and to bring the judicial office into disrepute (Canon 2B). Wherefore, Judge Sheffield is found guilty as charged in charges 1, 3, 11 and 12; and, as punishment therefor, Judge Sheffield is herewith suspended from the Office of the Circuit Judge of the 20th Judicial Circuit of Alabama, and such suspension to be without pay for a period of two months from this date."
Judge Sheffield appeals. We affirm in part and reverse in part as to the finding of guilt. We affirm as to the punishment imposed.
 OPINION
At the outset we set forth the relevant law and standard of review. The Court of the Judiciary found Judge Sheffield guilty of violating the following Canons of Judicial Ethics:
"CANON 2
 "A judge should avoid impropriety and the appearance of impropriety in all his activities.
 "A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
 "B. A judge should at all times maintain the decorum and temperance befitting his office and should avoid conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
". . ."
"CANON 3
 "A judge should perform the duties of his office impartially and diligently.
 "The judicial activities of a judge take precedence over his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
"A. Adjudicative Responsibilities:
". . .
 "(6) A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.
". . . *Page 355 
". . . .
"C. Disqualification:
 "(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
 "(a) He has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings."
". . .
". . ."
The Canons are not merely guidelines for proper judicial conduct. It is well-settled that the Canons of Judicial Ethics have the force and effect of law. Ala. Const. 1901 amend. 317.Wallace v. Wallace, 352 So.2d 1376, 1378 n. 1 (Ala.Civ.App. 1977).
The applicable standard of review for an order from the Court of the Judiciary is that the evidence must be clear and convincing. That is, "orders of the Court of the Judiciary are entitled to a presumption of correctness if the charge is supported by `clear and convincing evidence.'" Matter ofSamford, 352 So.2d 1126, 1129 (Ala. 1977). See also, Ala. Const. 1901, amend. 328, § 6.18 (6); Powers v. Board of Controlof Judicial Retirement Fund, 434 So.2d 745, 748 (Ala. 1983).
We turn now to the specific charges on which Judge Sheffield was found guilty and the sanction imposed therefor.
 A. Publicly Commenting about a Pending Case
The Court of the Judiciary found that Judge Sheffield violated Canon 3 A (6) by failing to "abstain from public comment about a pending proceeding." Indeed, Judge Sheffield did talk at some length with Mr. Lewis, the editor of theDothan Eagle, about the pending Cox hearing. However, not all public discussion by the judiciary of a pending case is an ethical violation. Canon 3 A (6) specifically states that it "does not prohibit judges . . . from explaining for public information the procedures of the court." Moreover, the State Trial Judges' Committee on News Reporting and Fair Trial has suggested that
 "[j]udges should encourage representatives of the news media [to] inquire of them for background information relating to the operation of the court system. While judges may not comment on the merits of a pending case, a judge may and should explain legal terms, and concepts, procedures, and the issues involved in that case so as to permit the news representatives to cover the case more intelligently. . . . Often there is no one, other than the judge, who is in a position to give a detailed and impartial explanation of the case to the news media." National Conference of State Trial Judges Committee on News Reporting and Fair Trial, Judicial Guidelines for Dealing with News Media Inquiries and Criticism (5th Draft, June 5, 1984).
Thus, on the one hand, a judge is strictly prohibited from public comment on the merits of a pending case. On the other hand, a judge is encouraged to explain a pending case in abstract terms. Obviously, judges walk a fine line between the duties and prohibitions of Canon 3 A (6). Indeed, the risk of being misquoted, albeit honestly, may enter into the consideration and tilt the balance in favor of "no comment."
Judge Sheffield argues that his comments to Mr. Lewis were merely abstract legal explications of the pending contempt hearing — a part of his judicial duty. The Court of the Judiciary found otherwise; and we agree that the evidence is clear and convincing that certain of his comments to the news reporter were on the merits, and thus were prohibited by Canon 3 A (6). We affirm the Court of the Judiciary's finding of an ethical violation as to Canon 3 A (6).
 B. Refusal to Recuse
The Court of the Judiciary also found Judge Sheffield guilty of violating Canon 3 C (1) because he did not recuse himself from the Cox contempt hearing. Recusal is required under Canon 3 C (1) when "facts are shown which make it reasonable for members *Page 356 
of the public or a party, or counsel opposed to question the impartiality of the judge." Acromag-Viking v. Blalock,420 So.2d 60, 61 (Ala. 1982). See, also, Wallace, supra, at 1379. Specifically, the Canon 3 C (1) recusal test is: "Would a person of ordinary prudence in the judge's position knowing all of the facts known to the judge find that there is a reasonable basis for questioning the judge's impartiality?" Thode, TheCode of Judicial Conduct — The First Five Years in the Courts, 1977 Utah L.Rev. 395, 402. In the instant case, the Court of the Judiciary answered "yes," and we agree.
It is not unethical per se and a violation of Canon 3 C (1) for a judge to hear a contempt proceeding in which he or his court is the object of the contempt. Ex parte Pope, 26 Ala. App. 282,283, 158 So. 767, 768 (1935); 46 Am.Jur.2d Judges § 174 (1969). As the Supreme Court of the United States has stated, "We cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions." Ungar v. Sarafite, 376 U.S. 575,584, 84 S.Ct. 841, 846, 11 L.Ed.2d 921 (1964). Therefore, Judge Sheffield's hearing a contempt proceeding in which he and his court were the objects of the contempt, without more, is not a violation of Canon 3 C (1). In some circumstances, however, it might appear to the reasonable man that a judge cannot "hold the balance nice, clear and true between [the parties]." Tumeyv. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749
(1927).
The present case is one involving such circumstances. We are firm in our resolve that a reasonable person could have questioned Judge Sheffield's ability to "hold the balance." The alleged contempt in this case was an angry letter to the editor criticizing the judge's actions in what was, if not before the letter's publication, at least after its publication, a highly sensitive and much-discussed issue in the judge's circuit. The letter was an attempt by Ms. Cox to make the women in Henry and Houston Counties aware of what she perceived to be not only an abuse of judicial power by Judge Sheffield, but also social callousness on his part.
Judge Sheffield stated to the Judicial Inquiry Commission that "[t]he overall impression [of the letter] is that the court is kicking around a cancer victim that has got children that are dropping out of school, to support the family, and that the court has said that a man can do all these things, throw, give his money away and not support his family, that paints a pretty dim picture of the court, I think." Moreover, in his conversation with Mr. Lewis the night before the hearing, the judge said, "I think it's pretty obvious who she is talking about. Everybody in Abbeville knows what she is talking about. Just because she doesn't name any names doesn't lessen what's been done." Thus, not only was the letter highly uncomplimentary, but it was also clearly directed toward Judge Sheffield. Under these circumstances, we find the evidence to be clear and convincing that the reasonable person would have questioned Judge Sheffield's impartiality, particularily in view of his initiation of the contempt proceeding; and we uphold the Court of the Judiciary's finding as to Canon 3 C (1).
In so finding, we stress that it is not merely the publication of Ms. Cox's letter that creates the impression of impartiality, but, as is generally true in these cases, it is the "totality of the facts" that requires recusal. Wallace,supra, at 1379.
Furthermore, we stress that the publication of Judge Sheffield's conversation with Mr. Lewis does not enter into our decision that the evidence supports a finding that the judge should have recused himself. The judge was unaware of Mr. Lewis's publication of their conversation until after the recusal motion was made and ruled on. Under the Canon 3 C (1) recusal test that we adopt today, only those facts known to the judge are relevant. Therefore, Mr. Lewis's article quoting the *Page 357 
judge cannot be a consideration in our recusal finding.
Nor does Judge Sheffield's erroneous contempt judgment against Ms. Cox enter into our decision that Canon 3 C (1) required recusal in the instant case. It is well-settled that "[a]dverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice."Hartman v. Board of Trustees of the University of Alabama,436 So.2d 837, 841 (Ala. 1983). "[R]ulings on issues of law or attitudes concerning legal issues" do not establish bias or prejudice requiring recusal unless those rulings or attitudes are the product of bias and prejudice of an extra-judicial source. Thode, supra, at 405.
In this case, the evidence does not support a finding of any actual bias or prejudice on Judge Sheffield's part. We find only that Canon 3 C (1) mandated recusal because a reasonable person could question the judge's impartiality. Therefore, we find that recusal was required without considering the judge's erroneous legal ruling.
Finally, we recognize that the reasonable person/appearance of impropriety test, as now articulated in Canon 3 C (1), in the words of the Supreme Court of the United States, may "sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." In re Murchison, 349 U.S. 133,136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). As stated in Canon 1 of the Code of Judicial Ethics, "An independent and honorable judiciary is indispensable to justice in our society," and this requires avoiding all appearance of impropriety, even to the point of resolving all reasonable doubt in favor of recusal.
 C. Erroneous Legal Ruling
Finally, the Court of the Judiciary found Judge Sheffield guilty of violating Canons 2 A and 2 B because of his "improperly initiated," "intemperate," "ill-advised and unjustified" response to Ms. Cox's letter. This response, of course, was issuing the show cause order and subsequently finding Ms. Cox in contempt. The judge argues that, absent evidence supporting a finding of bad faith, a judge may not be disciplined under Canons 2 A and 2 B for erroneous legal rulings. We agree.
In certain circumstances erroneous legal rulings may indeed amount to a failure to respect and comply with the law which undermines "the public confidence in the integrity and impartiality of the judiciary" (Canon 2 A), or to "conduct prejudicial to the administration of justice which brings the judicial office into disrepute" (Canon 2 B). But to allow all
erroneous legal rulings to be violations of Canons 2 A and 2 B would have serious consequences on the independence of our judiciary. Chief Justice Ben F. Overton of the Florida Supreme Court noted:
 "To allow disciplinary proceedings to evaluate judicial decisions could force judges to walk an ill-defined and standardless line between propriety and impropriety. Clearly, such a sword over a judge's head would have a tendency to chill his independence. A judge would have to be as concerned with what is proper in the eyes of the disciplinary commission as with what is the just decision." Overton, Grounds for Judicial Discipline in the Context of Judicial Disciplinary Commissions, 54 Chi. — Kent L.Rev. 59, 66 (1977).
Various courts have also recognized the problem:
 "The remedy for mistakes of law or fact in individual cases is by appeal, or certiorari, or other proper proceeding. A judge has a right to be wrong so far as any discipline by this court is concerned except as his decisions may be reversed or writs sustained."
In re: Judges of Municipal Court of Cedar Rapids, 256 Iowa 1135, 130 N.W.2d 553, 554 (1964).
 "To invoke the disciplinary power of this court against a judge as a substitute for appellate review would establish a practice dangerous to the independence *Page 358 
of the judiciary and equally dangerous to the public's constitutional right to an independent judiciary. Moreover, permitting such a procedure could encourage individuals or groups of individuals to take action primarily for the purpose of intimidation. We take notice that in recent years, in this Commonwealth and in other jurisdictions, those few judges who have come under substantial public criticism, by reason of their exercise of judgment and discretion have in most instances been criticized for alleged leniency and alleged excessive regard for the interests of the accused. If such a judge was intimidated, by fear that disciplinary action would be lightly undertaken by this court, it is possible that he would henceforth treat some accuseds with undue harshness and severity."
In re: Troy, 364 Mass. 15, 306 N.E.2d 203, 217 (1973).
We, too, are concerned with the problem of balancing the independence of the judiciary with its discipline. But having recognized the problem, how do we resolve it? Some states have reacted by constitutionally requiring that certain conduct be willful before it can rise to the level of an ethical violation. Cal. Const. art. VI, § 18 (c); Mo. Const. art. V, § 24 (3); Or. Const. art. VII, § 8 (1976). In many of the states lacking such constitutional or statutory provisions the judiciary has developed differing tests for limiting the degree of conduct that will subject a judge to discipline:
 "[W]hen there is an apparent pattern of procedure which shows a consistent disregard for the rights of litigants, or an arbitrary and capricious course of conduct in the handling of cases, or an oppressive and improper use of the power of the court, it is our duty to exercise our supervisory and administrative power to insure the correction of such abuses."
In re. Judges of Municipal Court of Cedar Rapids, supra, 130 N.W.2d at 554.
 "[I]f his decision was wrong, it was error in judgment and thus, not grounds for discipline. There was no convincing proof that Judge Dostert removed the prosecutor for improper reasons. Absent proof of improper motive, his exercise of discretionary power, though wrong, did not violate Canon 3A."
West Virginia Judicial Inquiry Commission v. Dostert,271 S.E.2d 427, 433-34 (W.Va. 1980).
 "Absent proof of malice or ill will, the question of due process should be remedied if necessary, by appeal or otherwise and not through disciplinary proceedings."
In re Anderson, 412 So.2d 743, 748 (Miss. 1982).
 "[M]ere errors of law or simple abuses of judicial discretion should not be subject of discipline by the Commission, [but] where the law is clear on its face, a judge who repeatedly imposes punishment not provided for by law is subject to discipline by the Commission."
People ex rel. Harrod v. Illinois Courts Commission, 69 Ill.2d 445, 14 Ill.Dec. 248, 260, 372 N.E.2d 53, 65 (111. 1977).
We feel that the above tests are all commendable methods of safeguarding the independence of the judiciary without at the same time diluting its discipline. The judiciary and the people of Alabama deserve no less. Therefore, today we hold that absent bad faith (i.e., absent proof of malice, ill will, or improper motive), a judge may not be disciplined under Canons 2 A and 2 B of the Alabama Canons of Judicial Ethics for erroneous legal rulings. Our careful consideration of the entire record fails to disclose clear and convincing evidence that Judge Sheffield acted in bad faith in initiating this contempt proceeding. Cf. Hayes v. Alabama Court of theJudiciary, 437 So.2d 1276 (Ala. 1983) (clear and convincing evidence of bad faith abuse of judicial power).
In so holding, we do not wish it to appear that we are unconcerned with the improper use of the contempt power by our judges. As the Pennsylvania Supreme Court said, "`[T]he law of contempt is not made for the protection of judges who may be sensitive. . . . Judges are supposed to *Page 359 
be [persons] of fortitude, able to thrive in a hardy climate'. . . . The authority of a judge to hold one in contempt, depriving as it does a person of liberty, is an authority that should be used rarely, and with extreme caution." Matter ofJohnson, 483 Pa. 227, 395 A.2d 1319, 1326 (1978) (quoting Craigv. Harney, 331 U.S. 367, 396, 67 S.Ct. 1249, 1264,91 L.Ed. 1546 (1947) (Jackson, J., dissenting)). We caution our judges to heed the above advice.
In the instant case, Judge Sheffield improperly used the contempt power. But did he do so in bad faith? "Bad faith," as defined by Black's Law Dictionary 127 (5th ed. 1979), "contemplates a state of mind affirmatively operating with furtive design or ill will." We simply do not find clear and convincing evidence that Judge Sheffield acted in bad faith in issuing the show cause order or in erroneously finding Ms. Cox guilty of contempt of court. Therefore, we reverse the Court of the Judiciary's finding of guilt as to Canons 2 A and 2 B. (We note that, although Judge Sheffield was found guilty of violating both Canons, these "violations" embrace but a single course of conduct, and, thus in reality, constitute but one ethical violation.)
 D. Sentence
We have reviewed the sanctions imposed by the court of the Judiciary in light of our reversal of one of the ethical violations found by that court. We find that two months' suspension without pay is commensurate with the two violations affirmed by this opinion. Therefore, we affirm the sentence.
AFFIRMED IN PART AND REVERSED IN PART.
MADDOX, FAULKNER, ALMON, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., and BEATTY, J., concur in the result.
EMBRY, J., not sitting.