HOOPER, Chief Justice
(dissenting).
I must respectfully dissent. On October 7, 1998, Judge Roy S. Moore, Etowah County Circuit Judge, petitioned this Court for a writ of prohibition and a writ of quo warranto, claiming 1) that the Alabama Judicial Inquiry Commission (“JIC”) had been conducting an investigation of him that violated the constitutional guaranty of due process and violated the Alabama Rules of Civil Procedure; 2) that Supreme Court Justice H. Mark Kennedy’s membership on the JIC was unlawful; and 3) that it was appropriate for this Court to issue the extraordinary writs of prohibition and quo warranto. Justice Kennedy is no longer a member of this Court or of the JIC; therefore, any issue regarding his membership on the JIC is moot.
According to Judge Moore’s petition, for the past two years the JIC had been investigating Judge Moore and in the investigation had not followed its own procedures for conducting investigations. Judge Moore claimed that its failure to follow its rules violated his Fourteenth Amendment due-process rights and his privacy rights and violated Canon 1 of the Alabama Canons of Judicial Ethics. Judge Moore complained that the JIC had refused to confirm or deny that he was the subject of an investigation, even after he made numerous inquiries as to the reasons, or the basis, for the investigation. Judge Moore complained that the JIC had exceeded its *438 powers in its investigation of his private and professional life and the lives of his family, his attorney, and his supporters.
In his petition, Judge Moore states that he believes the investigation began in 1996 while he was involved in litigation relating to his courtroom display of the Ten Commandments and his permitting voluntary clergy-led prayer in his courtroom. The JIC requested that Judge Moore appear before that commission to answer questions regarding that litigation. After that appearance, the JIC never contacted Judge Moore again about the alleged investigation. Judge Moore states that the JIC has issued several subpoenas relating to its investigation and that the issuance of those subpoenas violated Rule 7, Rules of Procedure of the Judicial Inquiry Commission, and Rule 45, Ala.R.Civ.P. He complains that the JIC did not give him notice of the subpoenas or provide him with copies of them. He claims that the JIC obtained copies of his personal bank records and that it issued subpoenas to attorneys who practiced in his courtroom, asking about his courtroom practices and procedures. Judge Moore’s petition alleges that the JIC informed a Wyoming court that the JIC wanted the names, addresses, and telephone numbers of every person and/or organization in the United States that has donated money to the “Judge Moore Defense Fund,” and wanted the amount of those contributions.
Judge Moore states in his petition that he discovered through a newspaper article and a letter from the Alabama State Bar to one of his attorneys that the investigation had to do with comments he allegedly made regarding Judge Ira DeMent’s ruling in the DeKalb County school-prayer case. See Chandler v. James, 958 F.Supp. 1550, 985 F.Supp. 1062, 985 F.Supp. 1068, 998 F.Supp. 1255 (M.D.Ala.1997). In a letter to Moore, made public earlier this year, the JIC stated that it had ceased its investigation of him. The letter stated that the JIC had found no wrongdoing justifying further investigation, but warned Judge Moore that some of his activities with regard to the “Ten Commandments litigation” were suspect.[1] That admission confirms at least one portion of Judge Moore’s allegations in his petition — that the JIC was in fact investigating him.
I write the following as a caveat to explain what this writing does not propose. I do not believe an investigatory organization should be hamstrung in its conduct of a legitimate investigation. Nor do I think a subject of a legitimate investigation has the right to know about and to inquire into all aspects of the investigation. Nor do I think there must be a deadline within which an investigation must end, in order to preserve the rights of a subject of the investigation. However, I do think the JIC is a unique organization. This petition exemplifies a critical gray area in this State’s laws and regulations dealing with the investigation and prosecution of judges suspected of wrongdoing.
As members of the highest Court in this state, we have a supervisory responsibility with respect to issues such as the one Judge Moore has raised in his petition. I dissent from the order dismissing the petition.
*439 SEE, Justice (statement of recusal).
Judge Roy S. Moore, a judge of the Etowah Circuit Court, seeks a writ of prohibition from this Court directing the Judicial Inquiry Commission (“JIC”) to stop an investigation of him that he alleges is illegal. Since Judge Moore filed his petition with this Court, the JIC has concluded its investigation and has notified Judge Moore that it will not file any charges against him. Thus, this Court today dismisses Judge Moore’s petition as moot. I have taken no part in considering Judge Moore’s petition or in disposing of it. Instead, I have recused myself from this case because Judge Moore has announced his candidacy for the same political office for which I am an announced candidate — the office of the Chief Justice of the Supreme Court of Alabama.
I take very seriously my constitutional duty to decide cases presented to this Court and the constitutional requirement that I decide cases impartially. See Dunlop Tire Corp. v. Allen, 725 So.2d 960, 975, 976 (Ala.1998) (See, J., statement of nonre-cusal). As I said in my statement relating to Dunlop Tire Corp.:
“The law of recusal reflects two fundamental judicial policies: First, it is the duty of a judge to decide cases. Second, a judge should be a neutral, or impartial, decision-maker. The Constitution of the United States and the Constitution of Alabama of 1901 impose on judges the duty to decide cases....
“The Due Process Clauses of the Constitution of the United States and ... the Alabama Constitution require that a judge be a neutral decision-maker_
“Thus, the recusal law embodied in statutes, court decisions, and codes of ethics reflects both the duty to decide cases and the requirement of impartiality.”
725 So.2d at 976 (Citations omitted.) The policies underpinning a judge’s duty to vote on cases before him and a judge’s duty to uphold the actual and apparent impartiality of the judiciary are embodied in Canon 3C of Alabama’s Canons of Judicial Ethics; that Canon provides in pertinent part, that “[a] judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned.” “It is well settled that the Canons of Judicial Ethics have the force and effect of law.” In re Sheffield, 465 So.2d 350, 355 (Ala.1984). The test of recusal under Canon 3C(1) is: “ ‘Would a person of ordinary prudence in the judge’s position knowing all ... the facts known to the judge find that there is a reasonable basis for questioning the judge’s impartiality?’ ” Id. at 356. Expressing that test in terms of the facts of this case, I would ask, “Acting as a person of ordinary prudence, and knowing that Judge Moore is a bona fide candidate for the same judicial office for which I am a bona fide candidate, do I see a reasonable basis for questioning my impartiality?”
In Reach v. Reach, 378 So.2d 1115 (Ala.Civ.App.1979), the husband in a pending divorce action moved the trial judge to recuse himself because the husband’s attorney had been a political opponent of the judge in the previous election. Because the husband had served as the attorney’s campaign manager, the husband argued that the judge’s impartiality might reasonably be questioned. Reach, 378 So.2d at 1117. The Court of Civil Appeals upheld the trial court’s denial of the husband’s motion to recuse. Id. That court stated that Canon 3(C)(1) of the Canons of Judicial Ethics provides “that a judge should recuse himself in a proceeding in which his impartiality might reasonably be questioned in instances where he has personal bias or prejudice concerning a party.” Id. However, “[s]uch prejudice is not presumed.” Id. Moreover, “it is incumbent on the moving party to prove that the bias is of a personal nature.” Id. Although instructive, Reach is distinguishable from the present situation. In Reach, the trial-court judge was not engaged in an active campaign. Rather, the election was over.
*440 Also instructive is Seeco, Inc. v. Hales, 334 Ark. 134, 969 S.W.2d 193 (1998). In Seeco, an attorney, Michael Fitzhugh, entered an appearance as local counsel of record for Seeco after the attorney had announced his candidacy for the circuit judgeship held by the trial judge presiding over the case. Based on the timing of Fitzhugh’s entry into the case, the trial judge disqualified Fitzhugh from the case, and, further, ordered that Fitzhugh could not practice law in Arkansas during his judicial candidacy. Id. at 195. The Supreme Court of Arkansas agreed with the trial judge’s decision to disqualify Fitz-hugh from appearing as counsel in the case, but disagreed with the trial judge’s order disqualifying Fitzhugh from practicing law in Arkansas while he was a judicial candidate. Id. at 196-97. The court expressed its concerns over “judge-shopping,” stating, “[w]e will not abide an orchestrated effort to force a judge’s removal from a case.” 334 Ark. at 140, 969 S.W.2d at 196. The Supreme Court of Arkansas further stated that generally “it is incumbent upon a sitting judge to recuse in cases where a political opponent is appearing as counsel.” Id. at 197. However, it stated that this general rule does not apply to a situation where the judicial candidate seeks to participate in a case merely to force a recusal. Id.
As I stated in Dunlop Tire Corp., I, too', am concerned about the possibility of “judge-shopping.” See 725 So.2d at 977. However, that does not appear to be an issue in this case. Unlike the conflict in Seeco, the possible conflict in this case lies not with counsel, but with the petitioner himself, who is a political candidate. After carefully weighing the policy requiring a judge to decide cases and the policy requiring a judge to be a neutral decision-maker, I conclude that my “impartiality might reasonably be questioned” if I were to participate in a case in which the petitioner is a bona fide, announced candidate for the same judicial office for which I am a candidate. I, therefore, recuse myself.

. " 'Although the commission's investigation produced some evidence which suggests noncompliance with the Canons of Judicial Ethics, the commission has decided based on its analysis that the complaints do not warrant the filing of a charge,' the letter said. 'In light of the evidence before it, the commission does, however, call to your attention the following canons and admonish you that a judge should dedicate himself or herself to compliance with both the letter and the spirit of these canons.'
"The canons involved require judges to avoid the appearance of impropriety, be sure judicial activities take precedence over other activities, and 'refrain from business and financial dealings that tend to reflect adversely on his impartiality and interfere with the proper performance of his judicial duties or exploit his judicial position.’ ”
Rose Livingston, "Panel Ends Moore Probe; Won’t Press Judicial Charges,” The Birmingham Mews, February 1, 2000, at Al.