On August 21, 2001, the City of Dothan Personnel Board ("the Board") filed a petition for a writ of mandamus ordering Judge Denny L. Holloway ("the trial judge") to recuse himself from presiding over Stanley E. DeVane's appeal of the Board's decision to affirm the termination of DeVane's employment by the Dothan Police Department. The Board asserts that the trial judge is disqualified from sitting in DeVane's appeal because, at the time of his appeal, one of the attorneys representing DeVane, Jere Segrest, was also representing the trial judge personally in a divorce proceeding. DeVane counters that any disqualification of the trial judge that might initially have arisen from the fact that he was represented in the divorce by Segrest was neutralized and "cured" by Segrest's withdrawal from DeVane's case immediately after the Board raised the issue of disqualification, and, additionally, by the full and complete termination of the trial judge's divorce proceeding approximately a month after Segrest withdrew. After careful analysis of all of the pertinent underlying facts and upon application of pertinent legal principles, we deny the petition.
"[A]s is generally true in these [recusal] cases, it is the `totality of the facts' that requires recusal." In re Sheffield, 465 So.2d 350, 356
(Ala. 1985). See also Wallace v. Wallace, 352 So.2d 1376, 1379
(Ala.Civ.App. 1977). Accordingly, we first set forth the following detailed chronology of the relevant events, case filings, and court orders:
 March 2, 2001 The trial judge, proceeding pro se, filed his "complaint for divorce" in the Barbour Circuit Court. *Page 3 
 June 1, 2001 DeVane's "Appeal hearing" was conducted before the Board.
 June 13, 2001 Segrest filed his appearance as attorney of record for the trial judge in the Barbour County case.
 June 29, 2001 The Board entered its order upholding DeVane's termination of employment.
 July 2, 2001 DeVane, by and through Segrest and his law partner, Kevin Walding, filed in the Houston Circuit Court a "Notice of Appeal" from the order of the Board. Also filed at that time and signed by Segrest and Walding was DeVane's motion requesting the court "to set a hearing in this matter to discuss, outline, establish the issues and schedule for this matter [and] to set a briefing schedule for this case." Apparently accompanying the motion was a proposed "Order," containing blank spaces in which to enter the case number assigned, the date, time and place of the scheduled hearing, and the date of execution of the order.
 July 9, 2001 The order form was completed by entry of the case number, the date (July 31), time, and place of the hearing, and the date (July 9) of the execution of the order. (The information entered in the blanks does not appear to be in the trial judge's handwriting — his handwriting is available for comparison at various points elsewhere in the record — and his signature appears to be the imprint of a signature stamp, rather than personally inscribed by the trial judge. This Court takes judicial notice of the fact that many circuit judges delegate to their judicial assistant, or other staff members, the scheduling of routine motions and the issuance of an order bearing the judge's signature stamp.)
 July 12, 2001 Linton White, city attorney and counsel for the Board in this action, wrote a letter to the trial judge, addressed to him at "P.O. Drawer 6406, Dothan, Alabama 36302," stating the following:
 "This will confirm our discussion this date regarding the Personnel Board's request for you to recuse yourself from the above referenced case. As you are aware this is based upon Canon Number 3C(1) of the Code of Judicial Ethics and numerous opinions from the Judicial Inquiry Commission as they relate to Mr. Jere Segrest's representation of you in [a] case . . . currently pending in the Circuit Court of Barbour County, Alabama.
 "As you can see from these opinions, Mr. Segrest's representation of you disqualifies you from having the above referenced case where the appeal to circuit court was signed by Mr. Segrest. This will further confirm the Commission's opinion that this disqualification is not subject to remittal.
 "This request does not imply any bias, as the Commission clearly states bias is not relevant. Rather, it is made in order to avoid any situation where the impartiality of the court might be called into question."
 The endorsement at the bottom of the letter reflects that a copy of it was sent to Segrest.
 July 13 (Friday), 2001 Segrest filed with the court his motion that he be allowed to withdraw from representing DeVane in the case, advising that "Kevin Walding will remain as sole counsel for [DeVane]." On this same date, the trial judge handwrote an order on the case action summary sheet reading: "Scheduling conference is continued generally. Notify." *Page 4 
 (The record does not reflect when the "discussion" referred to in White's July 12 letter took place, when that letter was mailed, or when the trial judge received it, nor does the record reflect the time of day on July 13 when Segrest filed his motion to withdraw.)
July 16 (Monday), 2001 Segrest's motion to withdraw was granted.
 July 20, 2001 The Board filed its "Motion for Recusal," moving the trial judge to recuse himself on a ground that, based on all of the facts and considerations recited in the motion, it was reasonable for a member of the public or a party to question the trial judge's impartiality.
 July 25, 2001 DeVane, appearing solely by and through Walding, filed his "Response to Motion for Recusal" noting that Segrest had withdrawn from the case, that Walding (per his attached affidavit) had not been, and would not be, involved in the divorce case in any way and that he had been unaware of it or Segrest's involvement in it until recently. The response also quoted from Judicial Inquiry Commission Advisory Opinion 99-731 to the effect that if a "judge's attorney withdraws from a case before the judge, the judge is not disqualified to proceed in the event another member of the same firm who has no involvement in the judge's case appears."
 July 30, 2001 An editorial was published in the Dothan Eagle, a newspaper in Dothan, Alabama, reciting the facts of Segrest's dual representation, the fact that he had withdrawn as DeVane's counsel, the fact that "the case" had been continued by the trial judge, the fact that White had filed a motion for recusal, and opining that "White shouldn't have to request recusal . . . in the interest of justice and appearances, Judge Holloway should recuse himself as soon as possible."
 August 7, 2001 Notation entered on case action summary sheet reading: "Notice of filing condensed transcript."
 August 13, 2001 The Board filed its petition for a writ of mandamus with this Court.
 August 14, 2001 Judge Holloway and Segrest appeared before the circuit judge of Barbour County, along with Mrs. Holloway and her attorney, and "represented to the court that [Judge and Mrs. Holloway had] reached an agreement with the advice and consent of their respective attorneys and have stated the agreement into the record of this Court." (As recited in the August 20, 2001, order noted next.)
 August 20, 2001 The Barbour Circuit Court enters a "Final Decree of Divorce" ratifying and confirming the parties' agreement, and signed not only by the Barbour County circuit judge, but also as "Approved" by Segrest and the attorney representing Mrs. Holloway.
 September 13, 2001 The trial judge entered an order reciting "the court having read the transcript[,] petitioner DeVane shall have 7 days to submit any briefs or citations of law [he] wishes to file and respondent shall have 7 days thereafter to submit its briefs and citations of law."
The Board also emphasizes that from May 5, 2001, to June 19, 2001, theDothan Eagle published various articles reporting on DeVane's planned appeal to the Board, the actual filing of that appeal, the appeal hearing, and a possible grand jury proceeding involving DeVane. The Board also asserts that there was live radio coverage of Segrest's argument and his *Page 5 
questioning of witnesses at the hearing and delayed television coverage of the hearing. In a May 5, 2001, article in the Dothan Eagle, Segrest was quoted as having said "I don't think [DeVane's] guilty of anything."
The standard governing this Court's review of a petition for a writ of mandamus is well-settled:
 "A writ of mandamus is an extraordinary remedy, and it will be `issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts Serv. Co., 590 So.2d 252 (Ala. 1991)."
Ex parte Empire Fire Marine Ins. Co., 720 So.2d 893, 894 (Ala. 1998).
 "A mandamus petition is the proper method to review the trial court's denial of a motion to recuse. However, the writ of mandamus is a drastic and extraordinary remedy and should be issued only upon a clear showing that the trial court has abused its discretion by exercising it in an arbitrary or capricious manner."
Ex parte Cotton, 638 So.2d 870, 872 (Ala. 1994) (citation omitted).
The first issue for this Court's consideration is whether this matter is properly before us. DeVane has filed a motion asserting that the Board's petition must be dismissed because the trial judge has not yet entered an order refusing to recuse. Specifically, DeVane argues that the implication to be drawn from other cases involving recusal, see, e.g., Exparte Balogun, 516 So.2d 606 (Ala. 1987), is that a trial judge must actually deny a motion to recuse before mandamus relief will be appropriate. In Balogun, the Court granted a petition for a writ of mandamus seeking the trial judge's recusal after he had in fact denied a motion for his recusal; however, we did not hold in Balogun that an express refusal to recuse was a prerequisite to the filing of a petition for a writ of mandamus on the issue. We make no such holding today. Rather, we conclude that the general law governing the right to relief by mandamus remains the proper test. Empire Fire Marine Ins., supra, and Ex parte Cotton, supra. Accordingly, we consider the facts of this case and the applicable law concerning judicial disqualification in light of this test.
The Board argues in support of its petition that Canon 3.C.(1), Alabama Canons of Judicial Ethics, requires the trial judge to recuse himself from considering DeVane's appeal. Canon 3.C.(1) states, in pertinent part, that "[a] judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned. . . ."
In Ex parte Duncan, 638 So.2d 1332 (Ala. 1994), this Court stated:
 "Under Canon 3(C)(1), Alabama Canons of Judicial Ethics, recusal is required when `facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge.' Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala. 1982). Specifically, the Canon 3(C) test is: `Would a person of ordinary prudence in the judge's position knowing all the facts known to the judge find that there is a reasonable basis for questioning the judge's impartiality?' *Page 6 
 Matter of Sheffield, 465 So.2d 350, 356 (Ala. 1984). The question is not whether the judge was impartial in fact, but whether another person, knowing all of the circumstances, might reasonably question the judge's impartiality — whether there is an appearance of impropriety. Id.; see Ex parte Balogun, 516 So.2d 606
(Ala. 1987); see, also, Hall v. Small Business Administration, 695 F.2d 175 (5th Cir. 1983)."
638 So.2d at 1334.
This Court has further noted a distinction between recusal and disqualification. In Ex parte Cotton, supra, this Court stated:
 "Although the fundamental difference is a procedural one, a brief clarification seems appropriate here. When the facts of a case present possible bias on the part of a trial judge, or the appearance of bias, the party who sees that possible bias or appearance of bias has the duty of moving for a recusal. It becomes the judge's responsibility to initiate the action of removing himself from the case under Canon 3(C)(1) only when he is disqualified. Generally, the grounds for recusal are as well known to the parties as they are to the judge, but facts leading to disqualification are often known only to the judge.
 "When disqualification is required, the duty is squarely placed upon the judge to disqualify himself. Consequently, the judge's failure to disqualify himself in a particular case, when required to do so by the Canons, may subject the judge to an inquiry if a complaint is filed with the Judicial Inquiry Commission, whereas, the judge's ruling on a recusal motion is reviewable on a mandamus petition filed in the appropriate appellate court.
 "However, although recusal and disqualification are two separate concepts, there has developed an overlap. The preamble to the Canons states that the Canons `formulate and establish . . . principles which govern the conduct of members of the judiciary.' These Canons establish a system to govern the judiciary that is administered by a peer-review system: the Judicial Inquiry Commission. However, the Canons are also being used to define legal standards of judicial conduct. See Wallace v. Wallace, 352 So.2d 1376 (Ala.Civ.App. 1977) (where the court held that the Canons had the force of law and used the objective standard of Canon 3(C)(1) to hold that a trial judge erred in failing to grant the motion to recuse). See also Ex parte Melof, 553 So.2d 554, 556 (Ala. 1989)."
638 So.2d at 871-72 (emphasis added).
Both parties have quoted various advisory opinions issued by the Judicial Inquiry Commission ("JIC") interpreting Canon 3.C.(1). In Exparte Balogun, 516 So.2d 606, 609 (Ala. 1987), this Court described the effect and the influence of JIC advisory opinions as follows:
 "Similar to an advisory opinion of this Court pursuant to § 12-2-10, Code of Alabama (1975), the [Judicial Inquiry] Commission's advisory opinions are not binding and do not affect a party's rights or remedies. See Alabama Education Ass'n v. James, 373 So.2d 1076 (Ala. 1979); Opinion of the Justices No. 269, 280 Ala. 692, 198 So.2d 269 (1967). While this Court will consider the opinion of the Commission, we are not bound by it."
In Advisory Opinion No. 96-616, the JIC stated:
 "[T]he Commission confirms that a judge is disqualified from hearing cases in which a party is represented by an attorney who represents the judge in unrelated litigation and that such disqualification *Page 7 
 includes cases where the judge has been sued in his or her official capacity in the unrelated litigation. See Advisory Opinions 80-74, 88-337, and 93-484. Ordinarily, such disqualification only applies to the particular attorney who represents the judge and not to other members of that attorney's firm, and such disqualification ceases when the litigation concludes or the representation otherwise ceases. However, since the disqualification arises under the general provision in Canon 3C(1) where a disqualification is required because the judge's `impartiality might reasonably be questioned,' extraordinary circumstances occasionally exist in which disqualification extends either to other members of the attorney's firm or for a period after representation ceases. See Advisory Opinions 78-53, 88-337, 88-377, 92-443, 92-454, 93-484, 94-516, 96-590, 96-582, and 96-606. The test under Canon 3C(1) is whether `a person of ordinary prudence in the judge's position knowing all of the facts known to the judge [would] find that there is a reasonable basis for questioning the judge's impartiality.' In re Sheffield, 465 So.2d 350, 356
(Ala. 1984). The judge should examine the facts in each case for any unusual circumstances under which his impartiality might still be reasonably questioned either after representation by the attorney ceases or in a case involving another member of his attorney's firm. . . .
 ". . . It is likewise the opinion of this Commission that ordinarily disqualification would not be required in a case in which an attorney who represents the judge in an unrelated matter withdraws and allows another attorney in the firm (who does not represent the judge) to handle the case. However, as with the situation discussed in the preceding paragraph of this opinion, the facts of each case should be examined by the judge to determine whether a reasonable basis for questioning the judge's impartiality would continue to exist despite the change in counsel."
Ala. Jud. Inquiry Comm'n Adv. Op. No. 96-616 (August 6, 1996). (Emphasis added.)
In that advisory opinion, the JIC addressed the further question whether the trial judge, who in that instance was a probate judge, "may continue a case that is not urgent until unrelated litigation in which he is represented by an attorney for one of the parties is resolved and then resume hearing the case"? Noting that "[t]he Compliance provisions of the Alabama Canons of Judicial Ethics state that `[a] probate judge should dispose promptly of the business of the court,'" and the requirement of Canon 3.C.(1), the JIC concluded that "a probate judge may not continue a case in which he is disqualified until the disqualification ceases."
The Board asserts in its petition that "[h]ere the judge continued the case generally in an apparent attempt to terminate his disqualification by allowing time for his divorce to be resolved." No factual support for that assertion is provided in any of the submissions before this Court. The trial judge's continuance order, which did not continue "the case" generally, but rather continued only the "scheduling conference," was written the day after White had talked to the trial judge and had written him a follow-up letter, and on the same day on which Segrest filed his motion to withdraw from the case. A continuance of the scheduling conference in consideration of those developments does not necessarily evidence an ulterior motive on the part of the trial judge that the Board would have us infer. *Page 8 
The JIC has consistently opined that the provisions of Canons 3.C.(1) prohibit a judge from sitting in any proceeding in which an attorney for one of the parties represents the judge in an unrelated matter. See Ala. Jud. Inquiry Comm'n Adv. Op. No. 78-53 (December 11, 1978), Adv. Op. No. 80-74 (August 29, 1980), Adv. Op. No. 80-78 (June 30, 1980), Adv. Op. No. 82-168 (December 21, 1982), Adv. Op. No. 87-313 (September 29, 1987), Adv. Op. No. 88-336 (August 2, 1988), Adv. Op. No. 88-337 (August 2, 1988), Adv. Op. No. 92-443 (April 24, 1992), Adv. Op. No. 96-616 (August 9, 1996), Adv. Op. No. 97-643 (May 9, 1997), and Adv. Op. No. 99-731 (June 30, 1999). However, consistent with the emphasized comments quoted from its Advisory Opinion No. 96-616 earlier in this opinion, the JIC has stated on many other occasions that the disqualification ceases when the attorney-client relationship between the attorney and the judge ends. See, e.g., Ala. Jud. Inquiry Comm'n Adv. Op. No. 87-313 and Adv. Op. No. 97-643. Likewise, the JIC has consistently opined that a judge's disqualification from hearing a case involving an attorney representing the judge in a separate matter does not ordinarily extend to other members of that attorney's law firm. See Ala. Jud. Inquiry Comm'n Adv. Op. No. 78-53, Adv. Op. No. 88-337, Adv. Op. No. 92-443, Adv. Op. No. 93-494 (July 23, 1993), Adv. Op. No. 96-616, Adv. Op. No. 97-643, and Adv. Op. No. 99-731.
 "[T]he mere fact that a judge has retained an attorney's law partner to represent the judge . . . in a single case would not disqualify the judge under Canon 3C, from sitting in a different case where the attorney represents one of the parties."
Adv. Op. No. 78-53.
 "[Absent unusual additional circumstances,] if the judge's attorney withdraws from a case before the judge, the judge is not disqualified to proceed in the event another member of the same firm who has no involvement in the judge's case appears.
". . . .
 ". . . The Commission also has held that, absent extraordinary circumstances, a judge is not disqualified from hearing a case in which another member of the judge's attorney's law firm appears."
Adv. Op. No. 99-731.
The JIC has always qualified this proposition, however, by pointing out that the proposition would not hold true in any situation where there were "extraordinary circumstances" whereby the judge's impartiality might still be reasonably questioned in a case involving another member of his attorney's firm, or after his representation by the attorney has ceased.
The American Bar Association's Standing Committee on Ethics and Professional Responsibility, in Informal Opinion 1477 (August 12, 1981), likewise concluded:
 "A judge must recuse himself or herself from adjudicating cases in which a litigant is represented by [the] judge's own attorney, whether the lawyer is representing the judge in a personal matter or in a matter pertaining to the judge's official position or conduct, subject to the rule of necessity."
[1980 — 1985 Ethics Opinions] ABA/BNA Lawyers' Manual on Prof'lConduct, Informal Op. 1477, 801:327 (1992) (emphasis omitted).
Although addressing only the specific question of recusal in the situation where the other litigation concerns the judge's official position or conduct, the ABA's informal opinion appears to conclude that generally recusal is required "even if the lawyer is not personally representing *Page 9 
clients before the judge but his law partners and associates are doing so." If this statement is taken at face value, it is contrary to the position the JIC has taken. The opinion further expresses the view of the committee that
 "a judge [should] recuse himself or herself from adjudicating cases in which a litigant is represented by the judge's own attorney, at least while the lawyer-client relationship exists between the judge and the lawyer."
Manual on Prof'l Conduct, 801:328. In that regard, the opinion seems in harmony with those advisory opinions of the JIC stating that a disqualification ceases when the litigation involving the judge concludes or when the representation of the judge by the attorney otherwise ceases.
In In re Sheffield, supra, after having stated that the "totality of the facts" must be analyzed in any given recusal case, this Court went on to state that "[u]nder the Canon 3C(1) recusal test that we adopt today, only those facts known to the judge are relevant." 465 So.2d at 356. When the media publicity concerning DeVane's intention to seek a hearing before the Board and the ensuing hearing was being generated, the trial judge had no knowledge that the matter might ultimately come before the Houston Circuit Court on appeal. Even after the matter was appealed to that court, the trial judge would have no knowledge that the case had been assigned to him until that fact was brought to his attention. For the reasons noted in connection with the chronology outlined above, it is reasonable to infer that the trial judge did not have personal knowledge of all of the facts that would give rise to recusal until White's conversation with him on July 12, 2001. At that point, however, the facts known to the trial judge would have established his disqualification under Canon 3.C.(1). At that point, if not earlier — i.e., as of the July 9 order "signed" by him — the trial judge was aware that Segrest, the attorney who had represented him in the divorce case one month earlier, was, along with Walding, representing DeVane in the case assigned to the trial judge. Further, he understood that the Board was requesting that he recuse himself based on those circumstances.
As noted earlier, Ex parte Cotton established that "[w]hen disqualification is required, the duty is squarely placed upon the judge to disqualify himself." 638 So.2d at 872. Further, once "a judge presiding in a particular case has been disqualified from hearing that case, under the Canons of Judicial Ethics, either voluntarily or by objection, he or she can take no further action in that case, not even the action of reassigning the case. . . ." Ex parte Jim Walter Homes,Inc., 776 So.2d 76, 80 (Ala. 2000). Accordingly, any action undertaken by the trial judge at that point, pending some elimination or cessation of the circumstances giving rise to the disqualification, would have been prohibited and subject to vacation on appellate review.[1] Nonetheless, it is a fact that the Board's formal "Motion for Recusal" was not filed until July 20, and Segrest's motion to withdraw had been granted in the interim.
"The burden of proof is on the party seeking recusal." Ex parteCotton, 638 So.2d at 872; Ex parte Melof, 553 So.2d 554, 557 (Ala. 1989). As already *Page 10 
noted, this is not a case where the trial judge is accused of actual bias or prejudice. Rather, the Board relies solely on the Canon 3.C.(1) principle that recusal is mandated where a reasonable person could question the judge's impartiality. We further recognize that this reasonable-person/appearance-of-impropriety test can serve sometimes to "bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties."In re Murchison, 349 U.S. 133, 136 (1955).
The judicial-recusal case considered by this Court with facts closest paralleling those of the instant case is Ex parte Cotton, supra. In that case, Ms. Cotton, through her attorney, Edward Jackson, filed a "slip-and-fall" case against a restaurant. Attorney Paul G. Smith answered the complaint for the defendants. Approximately two years after Mr. Smith had appeared for the defendants, Mr. Jackson requested that the trial judge recuse himself, contending that there was an appearance of impropriety arising from the circumstance that Mr. Jackson had "represented [the] plaintiffs in an earlier action against [the trial judge], who had been represented in that earlier action by Paul Smith." 638 So.2d at 871. This Court noted that, although the trial judge "was represented in the earlier case by one of the attorneys involved in the present case, that earlier case [had] been settled. It [was] not a pending case. . . ." 638 So.2d at 872. "That earlier action was settled and [was] no longer pending." 638 So.2d at 871. Because no comparative timetable between the two actions was provided in the opinion in Ex parte Cotton, we have examined the record of that case as maintained by the clerk of this Court to determine those circumstances. See, e.g., InternationalBhd. of Teamsters v. Hatas, 287 Ala. 344, 353, 252 So.2d 7, 14 (1971);Durbin v. Durbin, 818 So.2d 396 (Ala.Civ.App. 2000), reversed on other grounds, Ex parte Durbin, 818 So.2d 404 (Ala. 2001). Because Cotton, like the present case, involved a petition for a writ of mandamus, the record consisted of the petition and the briefs of the parties. They reflect the following timetable:
Ms. Cotton's lawsuit against the restaurant was filed by Mr. Jackson on June 28, 1991. Mr. Smith filed an answer on behalf of the defendants on July 12, 1991. Some 17 months after Mr. Smith appeared in the case, a civil action was filed against the trial judge by the representatives of an estate, claiming that the trial judge owed a debt represented by a promissory note. On November 23, 1993, Mr. Jackson filed a motion, asking the trial judge to recuse himself in Cotton's case, noting, however, that the litigation against the trial judge had been settled. The trial judge denied that motion the next day, and a petition for a writ of mandamus was filed with this Court. In connection with filing a brief with this Court in opposition to that petition, Mr. Smith filed an affidavit stating that although he had represented the trial judge for a period during 1993, the trial judge had personally negotiated a settlement of the case, that he was no longer representing the judge, and that he had not done so since October 11, 1993. Accordingly, it would seem that the circumstances of Cotton are similar to those of the instant case, because, for a period of time, an attorney representing a party in a case before the judge was also representing the judge in an unrelated lawsuit. By the time a motion to recuse on that basis was filed, however, the attorney's representation of the trial judge had ended. In the present case, by the time the motion to recuse was filed, Segrest's representation of DeVane had ended. Also, although it occurred subsequent to the filing of the *Page 11 
petition for mandamus with this Court, the litigation involving the trial judge had been "settled and [was] no longer pending" when we issued this opinion. This Court held in Ex parte Cotton, based on the facts before it, that Ms. Cotton had "shown no reasonable basis for questioning [the trial judge's] impartiality. Therefore, we must conclude that she has failed to carry her burden of showing a duty to recuse. The writ is denied." 638 So.2d at 873.
As earlier discussed, we conclude that the trial judge in this case was disqualified under Canon 3.C.(1) no later than July 12, 2001, and was therefore under a duty at that point to recuse himself. We further hold, however, consistent with the views expressed by the JIC in its various advisory opinions, that such a disqualification can be removed where the judge's attorney withdraws from the case pending before the judge and another member of the same firm, who has had no involvement in the judge's case, takes over the handling of the case, or when the litigation involving the judge concludes or the representation of the judge in that litigation by the lawyer in question otherwise ceases. This is certainly consistent with the holding in Ex parte Cotton, as now placed in context of the full set of facts underlying that holding.
We emphasize, however, as has the JIC, particularly in Advisory Opinion No. 96-616, that "since the disqualification arises under the general provision in 3C(1) where disqualification is required because the judge's `impartiality might reasonably be questioned,' extraordinary circumstances occasionally exist in which disqualification extends either to other members of the attorney's firm or for a period after representation ceases." The test that remains applicable at all times, the answer to which always depends upon the "totality of circumstances" of each case, is whether a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find that there is a reasonable basis for questioning the judge's impartiality. Inre Sheffield, 465 So.2d at 356. The Board acknowledges these principles, stating in its reply brief:
 "Ordinarily, a judge's disqualification ceases when the litigation concludes or the representation ceases. However, when the disqualification arises under Canon 3C(1), extraordinary circumstances occasionally exists in which disqualification extends either to other members of the attorney's firm or for a period after representation ceases."
The Board argues that the following factors constitute such extraordinary circumstances in this case, sufficient to extend the trial judge's disqualification beyond Segrest's withdrawal from further representation of DeVane and the sole assumption of his representation by Walding, and the conclusion of the trial judge's personal litigation:
1. Segrest's representation of DeVane, and his advocacy on behalf of DeVane both before and during the hearing before the Board, had been well publicized in the media. Thus, argues the Board, it is reasonable to assume that the trial judge was aware of that representation. We consider any such awareness irrelevant until the judge also became aware of the fact that DeVane's appeal to the circuit court had been assigned to him. The record indicates that this awareness may have come to the trial judge on July 9, but certainly was present by July 12. The trial judge's possible earlier awareness of Segrest's representation of DeVane, in advance of any appeal of the matter to the circuit court and assignment of the appeal to the trial judge, would be irrelevant. *Page 12 
2. The trial judge "continued the case generally in an apparent attempt to terminate his disqualification by allowing time for his divorce to be resolved." As we have already discussed, the "case" was never continued generally — only the scheduling conference/pretrial hearing. The record contains no evidence that would in any way support the contention that the trial judge's July 13 continuance of the scheduling conference and pretrial hearing was motivated by the consideration now attributed to him by the Board.
3. In a similar vein, after pointing out that the legislative act governing the appeal of the Board's ruling to the circuit court required that the issues for the appeal "be made up under the directions of the court and within thirty days after [a] transcript [of] the hearing isfiled in the court," the Board asserts in its petition that "[t]here is no explanation as to why the Scheduling/Pretrial Hearing, originally scheduled for July 31, 2001, was not rescheduled to make up these issues on appeal." (Emphasis supplied.) As reflected in the chronology, the transcript was not filed until August 7, 2001. The copy of the local act governing the appeal process in the Circuit Court of Houston County, provided to us as an exhibit to the petition, specifies that upon the taking of such an appeal the "board shall certify to a transcript of the proceedings before it and file the same in said court." Act No. 92-442, § 33, Ala. Acts 1992. The petition was filed with this Court on August 13, 2001. Given the relatively compressed time frame for the events ensuing after July 12, and the fact that the 30-day time frame for formulating the issues was not triggered until the Board filed the transcript on August 7, we do not infer some suspect reason for the failure of the judge to move more expeditiously to reschedule a hearing for the purpose of formulating the issues on appeal.
4. Because Segrest was quoted in a May 5, 2001, article in the DothanEagle as having stated that "I don't think that [DeVane's] guilty of anything," it would be reasonable "for a party or reasonable citizen of this community to think Judge Holloway saw or heard these statements by his personal attorney and questioned whether he was influenced by them." Further, the Board argues, because the newspaper article was placed before the judge as a part of the materials supporting the Board's motion for the trial judge to recuse, the trial judge "was indeed aware of that perception." We decline to hold that a statement by an attorney in support of his client in advance of an appeal to an administrative board is of such import as to assume that a reasonable citizen of the community would conclude that a trial judge to whom the matter was ultimately appealed, and who was represented by the attorney for a period of time during that attorney's simultaneous involvement in the appeal action, would have been influenced by the type of general statement of support for a client not uncommonly made by an attorney.
In its reply brief presented to this Court, the Board states that "standing alone, Judge Holloway's refusal to recuse himself is merely questionable. When added to the totality of the circumstances, however, which surround this particular case, it is reasonable for the City of Dothan Personnel Board to question his impartiality." As already explained, we agree that the "totality of the circumstances" must be looked to, for the purpose of determining whether, despite the withdrawal by Segrest from representation of DeVane and the termination of the trial judge's separate lawsuit, "extraordinary circumstances" nonetheless existed that so clearly established a continuing disqualification of the trial judge that there was "an *Page 13 
imperative duty" for him to recuse. We conclude that the trial judge, in light of the clear pronouncements by the JIC over the course of a series of advisory opinions, and given the further guidance afforded by our caselaw, did not abuse his discretion in deciding that Segrest's withdrawal removed the preexisting disqualification and obviated the necessity for his recusal. Certainly the trial judge's position in that regard has only been reinforced by the subsequent termination of his personal lawsuit and of Segrest's representation of him in it.
Accordingly, the petition for the writ of mandamus is denied.
PETITION DENIED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] It might therefore be argued that the trial judge's order entered on July 13 continuing generally the scheduling conference, entered on the same day Segrest's motion to withdraw from the case was filed, but before his motion had been granted, was inappropriate and subject to vacation. We do not address that particular issue, however, because it is clearly moot in light of the subsequent developments.