PER CURIAM.[1]
Facts and Procedural History
The facts of this case are undisputed. On January 23, 2015, Judge Callie Granade, *464 district judge for the United States District Court for the Southern- District -of Alabama, issued an order declaring unconstitutional both the Alabama Sanctity -of Marriage Amendment, Ala. Const, 1901, Art. I, § 36.03, and the Alabama Marriage Protection Act, Ala. Code 1975, § 30-1-19, as violating the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Searcy v. Strange, 81 F.Supp.3d 1285 (S.D. Ala. 2015). On January 26, 2015, Judge Granade entered an injunction prohibiting the Alabama Attorney General from enforcing any Alabama law that prohibits same-sex marriage. The injunction was stayed until February 9, 2015, to allow time for an appeal of her decision to the United' States Court of Appeals for the Eleventh Circuit. Strawser v. Strange, 44 F.Supp.3d 1206 (S.D. Ala. 2015).
On January 27, 2015, Roy S. Moore, Chief Justice of the Alabama Supreme Court,[2] sent a letter, on Supreme Court of Alabama letterhead, to then Governor Robert Bentley regarding Judge Gra-nade’s orders, expressing “legitimate concerns about the propriety of federal court jurisdiction over the Alabama Sanctity of Marriage Amendment.” In his three-page letter, Chief Justice Moore laid out his arguments as to-why Judge Granade’s federal-court orders were not binding upon the State of Alabama and avowed: “As' Chief Justice of the Alabama Supreme Court, I will continue to recognize the Alabama Constitution and the will of the people overwhelmingly expressed in the Sanctity of Marriage Amendment.” He also asked Governor Bentley “to continue to uphold and support the Alabama Constitution with respect to marriage” and advised that “I stand with you to stop judicial tyranny and any unlawful opinions issued without constitutional authority.”
On February 3, 2015, Chief Justice Moore penned another letter, on Administrative Office of Courts[3] letterhead, addressed to the probate judges of Alabama and entitled “Federal Intrusion into State Sovereignty.” To this 4-page letter, Chief Justice Moore also attached a 27-page memorandum of law, which concluded:
“In fulfillment of my obligations as Administrative Head of the Unified Judicial System, I have herein offered you my considered guidance- on how the recent orders from- the United States District Court in Mobile affect your duties as an Alabama probate judge. Because, as demonstrated above, Alabama probate judges are not bound by Judge Gra-nade’s orders in the Searcy [v. Strange, 81 F.Supp.3d 1285 (S.D. Ala. 2015),] and Strawser [v. Strange, No. 1:14-CV-424CG-C (S.D. Ala. Jan. 26, 2015),] cases, they would in my view be acting in violation of their oaths to uphold the Alabama Constitution if they issued marriage licenses prohibited under Alabama law.”
On February 8, 2015, Chief Justice Moore issued an administrative order to Alabama’s probate judges,'which provided:
“WHEREAS, neither the Supreme Court of the United States nor the Supreme Court of Alabama has ruled on the constitutionality of either the Sanctity of Marriage Amendment or the Marriage Protection Act:
“NOW THEREFORE, IT - IS ORDERED AND DIRECTED THAT:
*465 “To ensure the orderly administration of justice within the State of Alabama, to alleviate a situation adversely affecting the administration of justice within the State, and to harmonize the administration of justice between the Alabama judicial branch and the federal courts in Alabama:
“Effective immediately, no Probate Judge of the State of Alabama nor any agent or employee of any Alabama Probate Judge shall issue or recognize a marriage license that is inconsistent with Article 1, Section 36.03, of the Alabama Constitution or § 30-1-19, Ala. Code 1975.
“Should any Probate Judge of this state fail to follow the Constitution and statutes of Alabama as stated, it would be the responsibility of the Chief Executive Officer of the State of Alabama, Governor Robert, Bentley, in whom the Constitution vests ‘the supreme executive power of this state/ Art. V, § 113, Ala. Const. 1901, to ensure the execution of the law. ‘The Governor shall take care that the laws-be faithfully executed/ Art. V, § 120, Ala. Const. 1901. ‘ “If the governor’s ‘“supreme executive power”’ means anything, 'it means that when the governor makes a determination that the laws are not being faithfully executed, he can act using, the legal means that are at his disposal.” ’ Tyson v. Jones, 60 So.3d 831, 850 (Ala. 2010)(quoting Riley v. Cornerstone, 57 So.3d 704, 733 (Ala. 2010)).”
(Boldface type in original.) From February through June 2015, Chief Justice Moore also conducted several interviews with representatives of national and local media outlets.
On March 3, 2015, the Alabama Supreme Court released a decision in Ex parte State of Alabama ex rel. Alabama Policy Institute, 200 So.3d 495 (Ala. 2015)(“API I”), a per curiam opinion ordering the probate judges named as respondents to discontinue issuing marriage licenses to same-sex couples in compliance with Alabama law. Chief Justice Moore’s name did not appear in the vote line of this opinion, nor did he author or join any of the special writings. On March 10, 2015, the API I Court issued an order stating that API I “serves as binding statewide precedent,” joining Judge Don Davis as a respondent, and enjoining Judge Davis “from issuing any further marriage licenses contrary1 to 'Alabama law.” Ex parte State of Alabama ex rel. Alabama Policy Institute, 200 So.3d at 557, 558. Chief Justice Moore’s name did not appear in the vote line of the’ order. On March 12, 2015, the Court issued another order declaring that all previously non-named probate judges within the State were to be respondents and were to be bound by its March 3, 2015, opinion in API I. Chief Justice Moore’s name did not appear'in the vote line of that order. ’ ’ .
On May 21, 2015, Judge Granade issued an order certifying a plaintiff class as ,
“all persons in Alabama who wish to obtain a marriage license in order to mairy a person of the same sex and to have that marriage recognized under Alabama law, and who are unable to do so because of enforcement of Alabama’s laws prohibiting the issuance of marriage licenses to same-sex couples and barring, recognition of their marriages,”
and certifying a defendant class as
“all Alabama county probate judges who are enforcing or in the future may enforce Alabama’s laws barring the issuance of marriage licenses to same-sex couples and refusing to recognize their marriages.”
Strawser v. Strange, 307 F.R.D. 604, 614-15 (S.D. Ala. 2015). That same day, Judge Granade also issued an order declaring the Alabama Sanctity of Marriage Amendment *466 and the Alabama Marriage Protection Act unconstitutional as violating the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and enjoining the enforcement of any Alabama laws, including any injunction issued by the Alabama Supreme Court, that would prevent the issuance of a same-sex marriage license or the recognition of a same-sex marriage license. By that same order, Judge Granade stayed her injunction until such time as the United States Supreme Court issued its ruling in a then pending appeal that raised many of the same issues—Obergefell v. Hodges, 576 U.S. -, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015). Strawser v. Strange, 105 F.Supp.3d 1323 (S.D. Ala. 2015).
On June 26, 2015, the United States Supreme Court issued its opinion in Obergefell, holding that “same-sex couples may exercise the fundamental right to marry in all States” and that “there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character.” 576 U.S. at -, 135 S.Ct. at 2607-08.
On June 29, 2015, the Alabama Supreme Court invited the parties to Ex parte State of Alabama ex rel. Alabama Policy Institute (“API”) to submit any motions or briefs addressing the effect of the Oberge-fell decision on the existing orders in API.
On July 1, 2015, Judge Granade issued an order clarifying that her May 21 order enjoining the enforcement of any Alabama laws, including any injunction issued by the Alabama Supreme Court, that would prevent the issuance of a same-sex marriage license or the recognition of a same-sex marriage license was in effect and binding on all Alabama probate judges. Strawser v. Strange, No. 14-0424-CG-C, (S.D. Ala. July 1, 2015). On July 7, 2015, the Alabama probate judges filed in the federal district court an opposition to making Judge Granade’s injunction a permanent injunction, stating:
“The U.S. Supreme Court has now resolved the conflict between this Court’s rulings and the ruling of the Alabama Supreme Court. Both Courts are entitled to interpret the U.S. Constitution, and the U.S. Supreme Court decided that this Court’s interpretation was correct, essentially overruling the Alabama Supreme Court’s determination. The bottom line is this: probate judges in this State were following Court orders when they either refused to issue marriage licenses or refused to issue same-sex marriage licenses. Now that the confusion about the law has been cleared up by the U.S. Supreme Court, there is no indication that the probate judges will violate their oath and refuse to follow what the Supreme Court has established, and what the Alabama Attorney General and the Governor of the State have said is now the law of the land.”
On September 2, 2015, Chief Justice Moore sent a memorandum he authored[4] to Alabama Supreme Court Associate Justices Lyn Stuart, Michael F. Bolin, Tom Parker, Glenn Murdock, Greg Shaw, James Allen Main, Alisa Kelli Wise, and Tommy Bryan regarding the Court’s June 29 invitation for further briefing in API. In that memorandum, Chief Justice Moore stated: “I believe it is time for us to make a decision in this case ... to acquiesce in Obergefell and retreat from our March orders or to reject Obergefell and maintain our orders in place.” Chief Justice Moore then implored the Court to render guidance on this issue because, he said, “Obergefell is particularly egregious because it mandates submission in violation *467 of religious conscience” and “ominous developments are already occurring in other states.”
On October 7, 2015, Chief Justice Moore sent a second memorandum regarding API to the same Alabama Supreme Court Justices.[5] Chief Justice Moore wrote to inform his fellow Justices of an article published on AL.com, an online news service, entitled “Where is the Supreme Court of Alabama on gay marriage?”[6] The article noted the Alabama Supreme Court’s delay in addressing the effect of Qbergefell on API I and the subsequent orders issued in API. Chief Justice Moore also reminded the Justices of their obligation to discharge their duties in.a timely fashion and his “responsibility to respond to the continuing delay of this Court in addressing an issue of serious public concern, as well as an obligation to answer the probate judges of this State who have asked for our assistance in protecting their religious liberty.”
On October 20, 2015, the United States Court of Appeals for the Eleventh Circuit summarily affirmed Judge Granade’s May 21, 2015, order “granting a preliminary injunction requiring the issuance of marriage licenses to same-sex couples.” Strawser v. Alabama, No. 15-12508-CC (11th Cir. Oct. 20, 2015).
On January 6, 2016, Chief Justice Moore issued a four-page administrative order to Alabama probate judges. That order stated, in part:
“IT IS ORDERED AND DIRECTED THAT:
“Until further decision by the Alabama Supreme Court, the existing orders of the Alabama Supreme Court that Alabama probate judges have a ministerial duty not to issue any marriage license contrary to the Alabama Sanctity of Marriage Amendment or the Alabama Marriage Protection Act remain in full force and'effeet.”
Chief Justice Moore, although citing several federal-court decisions questioning the extent of the application of Qbergefell, did not address, discuss, cite, or otherwise alert the probate judges to Judge Gra-nade’s May 21, 2015, ordér or the Eleventh Circuit’s affirmance of that order.
On March 4, 2016, the Alabama Supreme Court issued an order dismissing all pending motions and petitions submitted in API (“API II”). Chief Justice Moore’s name appeared in the vote line of this order as concurring specially, and, in addition to his special writing concurring specially, Chief Justice1 Moore issued a léngthy statement of nonrecusal explaining why his recusal from the matter was not necessary.
On May 5, 2016, the Judicial Inquiry Commission filed a formal six-count complaint against Chief Justice Moore in the Court of the Judiciary, charging Chief Justice Moore with violating Canons 1, 2, 2A, 2B, 3, and 3A(6), Alabama Canons of Judicial Ethics. The Canons Chief Justice Moore- is charged with violating read as follows:
“Canon 1. A Judge Should Uphold the Integrity and Independence of the Judiciary
“An independent and honorable judi.ciary Is indispensable to justice in our society.' A judge'should participate in estáblishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed as applied to further that objective.”
*468 “Canon 2. A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
“A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary,
“B. A judge should -at all times maintain the decorum and temperance befitting his office and should avoid conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
[[Image here]]
“Canon 3. A Judge Should Perform the Duties of His Office Impartially and Diligently
“The judicial activities of a judge take precedence over his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
“A. Adjudicative Responsibilities.
[[Image here]]
“(6) A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control.. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.”
The secretary of the Court of the Judiciary personally served Chief Justice Moore with a copy of the complaint the same day it was filed. As of the filing of the complaint, Chief Justice Moore was automatically disqualified from acting as a judge and was no longer able to perform his duties as .Chief Justice, pending the resolution of the charges by the Court of the Judiciary., Ala. Const. 1901, § 159 (Off. Recomp.).
On September 30, 2016, after considering the evidence, most of which was not disputed, the Court of the. Judiciary rendered its judgment and issued a unanimous opinion holding that Chief Justice Moore had violated the Alabama Canons of Judicial Ethics as charged in the complaint. Although the majority of the Court of the Judiciary agreed that the appropriate sanction for Chief Justice Moore was removal from office, the court did not reaeh the necessary unanimous agreement for removal. However, the Court of the Judiciary did reach unanimous agreement on the sanction it ultimately imposed: “suspension from office without pay for the remainder of his term.”
Chief Justice Moore filed his notice of appeal with this Court on October 3, 2016.
Scope of Review
“The Court of the Judiciary is a constitutionally created court with limited jurisdiction. Ala. Const. 1901, Amend. No. 581, § 6.18 [now § 157, Ala.’Const. 1901 (Off. Recomp.) ] (proclaimed ratified June 19, 1996). It can decide only cases involving charges brought against judges by the Judicial Inquiry Commission. § 6.18(a) [now § 157(a) ]. ‘A judge aggrieved by a decision of the Court of the Judiciary may appeal to the Supreme Court [of Alabama]. The Supreme Court shall review the record of the proceedings on the law and the facts.’ § 6.18(b) [now § 157(b) ].”
Moore v. Judicial Inquiry Comm’n of Alabama, 891 So.2d 848, 855 (Ala. 2004). .
Standard of Review
“‘The applicable standard of review for an order from the Court of the Judiciary is that the evidence must be clear and convincing. That is, “orders of the Court of the Judiciary are entitled *469 to .a presumption of correctness if the charge is supported by ‘clear and convincing evidence/ ” ’ In re Sheffield, 465 So.2d 350, 355 (Ala. 1984) (quoting In re Samford, 352 So.2d 1126, 1129 (Ala. 1977)). With regard to questions of law, this Court’s review is de novo. Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala. 1999)(quoting Ex parte Graham, 702 So.2d 1215 (Ala. 1997)). However, factual findings of the Court of the Judiciary based on ore tenus evidence are presumed correct, and ‘[the Court of the Judiciary’s] judgment based on those findings will not be disturbed unless the appellate court, after considering all the evidence and all reasonable inferences that can be drawn therefrom, concludes that the judgment is plainly and palpably wrong, manifestly unjust, or without supporting evidence.’ Boggan v. Judicial Inquiry Comm’n, 759 So.2d 550, 555 (Ala. 1999). In the absence of specific factual findings, ‘this court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous and against the great weight and preponderance of the evidence.’ 759 So.2d at 555 (quoting Powers v. Judicial Inquiry Comm’n, 434 So.2d 745, 749 (Ala. 1983)). Further, in reviewing an appeal from a judgment of the Court of the Judiciary finding the judge guilty of the charges against him or her, the Supreme Court ‘must consider the evidence ... in the light most favorable to the Judicial Inquiry Commission, the prevailing party.’ Boggan, 759 So.2d at 555.
“Our review is also. guided by the Supremacy Clause of the United States Constitution: ‘This Constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the judges in every' state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding.’ U.S. Const., art. VI, cl. 2.”
Moore, 891 So.2d at 855 (footnote omitted).
Issues on Appeal
I.
Chief Justice Moore argues-that the Judicial Inquiry Commission and the Court of the Judiciary lack jurisdiction to investigate any complaint related to his issuance of the January 6, 2016, administrative order because, he says, only -the Alabama Supreme Court may review an administrative order issued by a Chief Justice.
Alabama Const. 1901, Art. VI, § 149, established the Chief Justice of the Alabama Supreme Court as the administrative head of the Alabama judicial system. Section 12-5-20, Ala. Code 1975, grants the Justices of the Alabama Supreme Court the authority ‘to “review, countermand, overrule, modify or amend any administrative decision by either the Chief Justice or the Administrative Director of Courts.” When a complaint was submitted to the Judicial Inquiry Commission, that entity was tasked with investigating whether Chief Justice Moore, in issuing the order, violated a Canon of Judicial Ethics. In turn, once a formal complaint- was filed, the Court of the Judiciary was tasked with determining whether clear and convincing evidence existed to show that issuance of the order violated a Canon of Judicial Ethics. Neither the Judicial Inquiry Commission nor the Court of the Judiciary was asked to “review, countermand, overrule, modify or amend” the January 6 order.
The Court of the Judiciary is not an appellate court tasked with reviewing, overruling, modifying, reversing, or remanding any judicial order. Rather, the Court of the Judiciary is tasked with reviewing judicial conduct. The Court of the Judiciary may,, consider the content of a judicial order as it speaks to the conduct *470 or motivations leading to the entry of the order or to whether that conduct or motivation constituted a violation of a Canon, but the Court of the Judiciary can neither affirm nor reverse such an order; that authority lies exclusively with the appropriate appellate court. See §§ 12-2-7, 12-3-9, and 12-3-10, and 12-5-20, Ala. Code 1975. See In re Sheffield, 465 So.2d 350, 357 (Ala. 1984)(“In certain circumstances erroneous legal rulings may indeed amount to a failure to respect and comply with the law which undermines ‘the public confidence in the. integrity and impartiality of the judiciary’ (Canon 2A), or to ‘conduct prejudicial to the administration of justice which brings the judicial office into disrepute’ (Canon.2B).”). Therefore, to the extent the Judicial Inquiry Commission investigated and the Court of the Judiciary considered the January 6, 2016, administrative order to determine whether its issuance undermined the public confidence in the integrity and impartiality of the judiciary, whether it was prejudicial to the administration of justice, or whether it violated any other Canon of Judicial Ethics, both entities acted within their jurisdiction.
II.
Chief Justice Moore argues that all charges asserted against him should be dismissed because, he says, the Judicial Inquiry Commission failed to prove by clear and convincing evidence that he violated any of the Canons of Judicial Ethics as charged.
Count I
Count I of the complaint charged: “By willfully issuing his Administrative Order of January 6, 2016, in which he directed or appeared to direct all Alabama probate judges to follow Alabama’s marriage laws, completely disregarding a federal court injunction when he knew or should have known every Alabama probate judge was enjoined from using the Alabama marriage laws or any Alabama Supreme Court order to deny marriage licenses to same-sex couples. Chief Justice Roy S. Moore violated the following Alabama Canons of Judicial Ethics in that he, separately and severally:
“a. Failed to uphold the integrity and independence' of the judiciary, Canon 1;
“b. Failed to participate in establishing, maintaining, and enforcing and to himself observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, Canon 1;
“c. Failed to avoid impropriety and the appearance of impropriety in all his activities, Canon 2;
“d. Failed to respect and comply with the law, Canon 2A;
“e. Failed to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, Canon 2A;
“f. Failed to avoid conduct prejudicial to the administration of justice that brings the judicial office into disrepute, Canon 2B; and/or
“g. Failed to perform the duties of his office impartially, Canon 3.”
Chief Justice Moore argues that the Court of the Judiciary’s finding that his January 6, 2016, administrative order is anything other than a “status update” is unsupported by the text of the order itself. He argues that the order was a mere “status update” to clarify the confused state of the law for the probate judges and that he “did not direct the probate judges to do anything or [to] disregard federal law.” (Chief Justice Moore’s brief, at 53.) After reviewing the documents in evidence and Chief Justice Moore’s testimony, the Court of the Judiciary held:
*471 “This court does not find credible Chief Justice Moore’s claim that the purpose of the January 6, 2016, order was merely to provide a ‘status update’ to the State’s probate judges. Chief Justice Moore repeatedly has asserted to this Court that he wanted to draw attention to the ‘conflicting orders’ of API I and the injunction in Strawser [v. Strange, 105 F.Supp.3d 1323 (S.D. Ala. 2015)]. Thus, Chief Justice Moore clearly knew about the contrary, binding injunction in Strawser. Chief Justice Moore’s failure in the January 6, 2016, order to acknowledge the recipients’ obligations under the binding federal injunction in Strawser — and the potential dire implications of open defiance of that injunction — did not negate the existence of the injunction in Strawser (or Oberge-fell’s clear holdings .,.). Moreover, the failure to mention the Strawser injunction did not prevent the January 6, 2016, order — with its clear statement that probate judges could not issue same-sex marriage licenses — from being in direct conflict with Strawser ....
“We likewise do not accept Chief Justice Moore’s repeated argument that the disclaimer in paragraph 10 of the January 6, 2016, order — in which Chief Justice Moore asserted he was ‘not at liberty to provide any guidance ... on the effect of Obergefell on the existing orders of the Alabama Supreme Court’— negated the reality that Chief Justice Moore was in fact ‘orderpng] and directing]’ the probate judges to comply with the API orders regardless of Obergefell or the injunction in Strawser.
[[Image here]]
“... [I]t is clear to this court that Chief Justice Moore in fact took a legal position in the January 6, 2016, order, despite his claim that he was not taking any such position.
“Further, Chief Justice Moore’s use of legal authority in support of that position- was incomplete to the point that this court finds it was intended to be misleading. First, his brief description of 'Obergefell in the January 6, 2016, order as holding ‘unconstitutional certain marriage laws in the states of Michigan, Kentucky, Ohio, and Tennessee’ is, as the JIC [Judicial Inquiry Commission] explains, at best incomplete and at worst intentionally misleading. That brief description of Obergefell did not address the clear holding of Obergefell — that same-séx couples may exercise the right to marry in all states, not just Michigan, Kentucky, Ohio, and Tennessee.
“Second, Chief Justice Moore’s use of authority from the Eighth and Tenth Circuits was selective and misleading. In each of the cases Chief Justice Moore cited in the January 6, 2016, order, the lower federal courts had issued injunctions before Obergefell was decided— and each of those injunctions was consistent with what Obergefell later held. Thusj the question was whether Oberge-fell had rendered moot the need for the lower federal courts to continue to exercise jurisdiction to enforce the injunctions they had already entered before Obergefell was decided. In each case, as the JIC explains, ‘it appears the courts remained unconvinced that the states would actually abide by Obergefell’s mandate. To say that these cases somehow indicate that Obergefell does not impact Alabama law has no basis.’ At best, as the JIC asserts, the ‘selective inclusion’ and ‘selective omission’ of authority was ‘one-sided’; at worst, it was ‘fully misleading* and was a ‘thinly-veiled order directing probate judges to defy federal law.’ Indeed, as we have already noted, Chief Justice Moore’s own attorney in. this proceeding interpreted the January 6,' 2016, order as a call for open defiance of federal court decisions and *472 issued a press release to that effect on the. date the order was released.
“In sum, this court rejects Chief Justice Moore’s argument that the January 6, 2016,. order ‘merely recited the status of the API orders’ and ‘did not offer an opinion, pro or con, as to their validity.’ The order clearly asserts that the ‘existing orders of the Alabama Supreme Court that Alabama probate judges have a ministerial duty not to issue any marriage license contrary to the Alabama Sanctity of Marriage Amendment or the Alabama Marriage Protection Act remain in full force and effect.’ (Boldfáce type in original.)
“Beyond question, at the time he issued the January 6, 2016, order Chief Justice Moore knew about Obergefell and its -clear holding that the United .States Constitution protects, the right of same-sex. couples to marry. Similarly, at the time he issued the ^January 6, 2016, order he knew the binding application of the federal injunction in Strawser. Accordingly, we conclude that the omission from the January 6, 2016, order of. any mention of the federal, injunction in Strawser was intentional. Further, this intentional omission .was a failure to follow clear law and a failure to uphold the integrity and independence of the judiciary.
“As noted, Chief Justice Moore’s use of caselaw in the order was incomplete, misleading, and manipulative. We find that, when coupled with the intentional omission of binding federal authority, the clear purpose of the January 6,20Í6, order was to order and direct the probate judges — most of whom have never been admitted to practice law in Alabama — to stop complying with binding federal law until the Alabama Supreme Court decided what effect that federal law would have.
“Based on the foregoing, this court finds that the JIC has proved by clear and convincing evidence that Chief Justice Moore is guilty of charges nos. 1-6. As to charge no. 1, by willfully issuing the January 6, 2016, order, in which he directed or appeared to direct all Alabama probate judges to follow Alabama’s marriage laws, completely disregarding a federal court injunction when he knew or should have known every Alabama probate judge' was -enjoined from using the Alabama marriage laws or any Alabama Supreme Court order to deny marriage -licenses to same-sex couples, the evidence that Chief Justice Moore violated Canons 1; 2, 2A, 2B, and 3 is clear and convincing.”
The record before this.-Court supports the findings of the Court of the Judiciary; therefore, we cannot conclude that its judgment is plainly and palpably wrong, manifestly unjust, or without supporting evidence. By his own admission,--Chief Justice Moore had an interest in the Strawser and the Searcy cases. The early developments in those cases inspired Chief Justice Moore to pen a letter to the Governor and to issue the February 8, 2015, administrative order enjoining any probate judge in the State from issuing a marriage license to a same-sex couple. Chief Justice Moore further testified that he agreed at the time he issued his January 6, 2016, administrative order that the probate judges had filed an acknowledgment in Strawser that there was no longer a conflict and the United States Supreme Court’s decision in Obergefell was the supreme law of the land.[7]
*473 Chief Justice Moore also testified that Judge Granade had jurisdiction to enter the injunction. There is no question that Chief Justice Moore was aware that Judge Granade had issued an injunction that was binding on all parties to API, including all Alabama probate judges. Despite his knowledge and despite his agreement that Judge Granade had jurisdiction to enter the injunction, Chief Justice Moore testified that Judge Granade’s order created what he perceived to be a conflict with API I, a conflict he felt compelled to address.
Chief Justice Moore also testified’ that he issued the January 6, 2016, administrative order because he “felt it necessary to inform the public that the Alabama Supreme Court was still deliberating” the effect of Obergefell on API I. Chief Justice Moore knew, or should have known, that such an act was unnecessary because the public was already aware of the continued deliberation as evidenced by the news article Chief Justice Moore attached to his October 7, 2015, memorandum to the Justices of the Court. There was no reason for him to issue the January 6, 2016, administrative order.
Even if this Court were to agree that the January 6, 2016, administrative order was merely a “status update,” Chief Justice Moore, with willful deliberation, failed to address the existence of Judge Gra-nade’s injunction or the Eleventh Circuit’s affirmance of that injunction. Issuing such a partial “status update” served no purpose, other than to create confusion among the probate judges. Although some of the probate judges disagreed with Obergefell and some requested the Supreme Court revisit API I and issue an order alleviating them from complying with Obergefell and with Judge Granade’s injunction, it is clear from the probate judges’ July 7, 2015, filing in Strawser that they were no longer confused as to the meaning of Obergefell or of their obligations under Judge Gra-nade’s injunction. ■ ■: ■ ■
Further, this Court cannot agree with Chief Justice Moore that the January 6, 2016, administrative order was a mere “status update.” Thé 'order itself betrays that interpretation.’ With full knowledge that every probate judge in Alabama was subject to a federal-court injunction prohibiting the enforcement of the Alabama Sanctity of Marriage Amendment, the Alabama Marriage Protection Act, or any injunction issued by the Alabama Supreme Court prohibiting the issuance of a marriage license to a-same-sex couple, Chief Justice Moore “ordered and directed” each of those same probate judges that,
“[ujntil further decision by, the Alabama Supreme Court, the existing orders of the Alabama Supreme Court that Alabama probate judges have a ministerial duty not to issue any marriage license contrary to the Alabama Sanctity of Marriage Amendment or the Alabama Marriage Protection Act remain in full force and effect.”
For these reasons, this Court concludes that the Court of the Judiciary had before it clear and convincing evidence to support its finding that Chief. Justice Moore willfully issued an order directing the probate judges to disregard a binding federal-court injunction in violation of the Alabama Canons of Judicial Ethics as charged in Count I of the complaint. We affirm the judgment of the Court of the Judiciary as to Count I.
Count II
Count II charged:
“In demonstrating his unwillingness in his Administrative Order of January 6, 2016, to follow clear law, Chief Justice Roy S. Moore violated the following Alabama Canons of Judicial Ethics in that he, separately and severally:
*474 “a. Failed to uphold the integrity and independence of the judiciary, Canon 1;
“b. Failed to participate in establishing, maintaining, and enforcing and to himself observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, Canon 1;
“c. Failed to avoid impropriety and the appearance of impropriety in all his activities, Canon 2;
“d. Failed to respect and comply with the law, Canon 2A;
“e. Failed to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, Canon 2A;
“f. Failed to avoid conduct prejudicial to the administration of justice that brings the judicial office into disrepute, Canon 2B; and/or
“h. Failed to perform the duties of his office impartially, Canon 3.”
Chief Justice Moore argues that because his January 6, 2016, administrative order did not decide the issue pending before the Alabama Supreme Court, Le., the effect of Obergefell on API I, he could not have been ignoring or failing to follow clear law. He maintains that he “did not direct or order probate judges to violate any federal court order or precedent.”
We disagree. We concur with the Court of the Judiciary, which found:
“Beyond question, at the time he issued the January 6, 2016, order Chief Justice Moore knew about Obergefell and its clear holding that the United States Constitution protects the right of same-sex couples to marry. Similarly, at the time he issued the January 6, 2016, order he knew the binding application of the federal injunction in Strawser. Accordingly, we conclude that the omission from the January 6, 2016, order of any mention of the federal injunction in Strawser was intentional. Further, this intentional omission was a failure to follow clear law and a failure to uphold the integrity and independence of the judiciary.”
Chief Justice Moore’s failure to mention the Strawser injunction in his January 6, 2016, order does not absolve him of inciting those bound by it to disobey. There is clear and convincing evidence in the record before us, including Chief Justice Moore’s public writings leading up to his issuance of the administrative order, the administrative order itself, and Chief Justice Moore’s testimony before the Court of the Judiciary, to support that court’s finding that Chief Justice Moore “demonstrated an unwillingness to follow clear law, and Chief Justice Moore thereby violated Canons 1, 2, 2A, 2B, and 3.” We affirm the judgment of the Court of the Judiciary as to Count II.
Count III
Count III charged:
“In issuing his Administrative Order of January 6, 2016, and in abusing his administrative authority by addressing and/or deciding substantive legal issues while acting in his administrative capacity, Chief Justice Roy S. Moore violated the following Alabama Canons of Judicial Ethics in that he, separately and severally,
“a. Failed to uphold the integrity and independence of the judiciary, Canon 1;
“b. Failed to participate in establishing, maintaining, and enforcing and to himself observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, Canon 1;
*475 “c. Failed to avoid impropriety and the appearance of impropriety in all his activities, Canon 2;
“d. Failed to respect and comply with the law, Canon 2A;
“e. Failed to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, Canon 2A;
“f. Failed to avoid conduct prejudicial to th'e administration of justice that brings the judicial office into disrepute, Canon 2B; and/or
“g. Failed to perform the duties of his office impartially, Canon 3.”
Chief Justice Moore argues there is insufficient evidence in support of Count III because, he says, he did not determine any substantive legal issues in his January 6, 2016, administrative order. Chief Justice Moore maintains that he left the determination of all substantive issues to the Alabama Supreme Court and that his use of the phrase “[ujntil further decision by the Alabama Supreme Court” insulates him from any culpability. We disagree.
By ordering and directing the probate judges that “the existing orders of the Alabama Supreme Court ... remain in full force and effect” (boldface type in original), Chief Justice Moore decided on his own and in his administrative capacity as head of the State’s judicial system that Obergefell had no effect on API I. He did indeed address the very issue pending before the Alabama Supreme Court, and he decided that issue. The fact that his decision was limited until such time as the whole Court issued a decision in API does not diminish his act of rendering a decision when he lacked authority to do so. We agree that in “deciding substantive legal issues while purporting to act in his administrative capacity,- Chief Justice Moore violated Canons 1, 2, 2A, 2B, and 3.” We affirm the judgment of the Court of the Judiciary as to Count III.
Count IV
Count IV charged:
“In issuing his Administrative Order of January'6, 2016, and thereby substituting his judgment for the judgment of the entire .Alabama Supreme Court on a substantive legal issue in a case then pending in that Court, i.e., the effect of the decision of the United States Supreme Court in Obergefell, Chief Justice Roy S. Moore violated the following Alabama Canons of Judicial Ethics in that he, separately and severally:
“a. Failed to uphold the integrity and independence the judiciary, Canon i; ...
“b. Failed to observe high standards of conduct, so that the integrity and independence of the judiciary may be preserved, Canon 1;
“c. Failed to avoid impropriety and the appearance of impropriety in all his activities, Canon 2;-
“d. Failed to respect and comply with the law, Canon 2A;‘
“e. Failed to conduct himself at all times in a manner that promotes public confidence in thé integrity and impartiality of the judiciary, Canon 2A; .
“f. Failed to avoid conduct prejudicial to the administration of justice that brings the judicial office into disrepute, Canon 2B;
“g. Failed to perform the duties of his office impartially, Canon 3; and/or
“h. Failed to abstain from public comment about a pending proceeding in his own court, Canon 3A(6).” .
Chief Justice Moore argues that the plain text of his administrative order belies a finding that he substituted his own opinion for that of the Alabamá Supreme *476 Court. Chief Justice Moore argues that the following language in the order is unequivocal evidence that he did not substitute his opinion for that of the Court:
“I am.not at liberty to provide any guidance to Alabama probate judges on the effect of Obergefell on the existing orders of the Alabama Supreme Court. That issue remains before the entire Court which continues to deliberate on the matter.”
We disagree.
..Stating that one is not at liberty to provide guidance while taking great pains to include several pages of legal analysis and argument is disingenuous. Chief Justice Moore knew the Alabama Supreme Court had asked for briefing on the issue of the effect of Obergefell on API I. At the time he issued his administrative order, he knew that the issue was still pending before the Court. Chief Justice Moore testified at length that he believed the Alabama Supreme Court was taking too long to decide the issue. Deciding he could wait no longer, he substituted his opinion for that of the Court. He decided when to release his order, and he decided to inform the probate judges that Obergefell had "no effect on API I. The evidence clearly and convincingly supports the Court of the Judiciary’s finding that “Chief Justice Moore substituted his judgment for' the judgment of the entire Alabama Supreme "Court on a substantive legal issue in a case then pending in that Court — the effect of the decision of, the United States Supreme Court in Obergefell — and thereby violated Canons 1, 2, 2A, 2B, 3, 3A(6).” We affirm the judgment of the Court of the Judiciary as to Count IV.
Count V
Count V charged:
“By issuing his Administrative Order of January 6, 2016, and willfully abusing his administrative authority to issue the Administrative Order of January 6, 2016, Chief Justice Roy S. Moore interfered with legal process and remedies in the United States District Court and/or the Alabama Supreme Court available through those courts to address the status of any proceeding to which Alabama’s probate judges were parties. In so doing, Chief Justice Moore, separately .and severally, violated the following Alabama Canons of Judicial Ethics:
“a. Failed to uphold the integrity and independence of the judiciary, Canon 1;
“b. Failed to observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, Canon 1;
“c.' Failed to avoid impropriety and the appearance of impropriety in all his activities, Canon 2;
“d. Failed to respect and comply with the law, Canon 2Á;
“e. Failed to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, Canon 2A;
“f. Failed to avoid conduct prejudicial to. the administration'of justice that brings the judicial office into disrepute, Canon 2B; and/or
“g. Failed to perform the duties of his office impartially,'Canon 3.”
Chief Justice Moore argues that his January 6, 2016, administrative order could not possibly have interfered with proceedings in another court when, he says, his order “merely stated that the impact of Obergefell on the orders of this Court was for the full Court to determine” and “said nothing of other proceedings before the lower federal District Court because that issue was not before this Court.” (Chief Justice Moore’s brief, at. 73-74.)
*477 Chief Justice Moore again omits from his argument the fact that he “ordered .and directed” probate judges who were, at the time, unquestionably bound by a federal-court injunction that the orders issued by the Alabama Supreme Court in API remained in “full force and effect.” At the time Chief Justice Moore issued his January 6, 2016, administrative order, the probate judges had already agreed and accepted that they were parties to and were bound by the Strawser injunction. Chief Justice Moore testified that Judge Gra-nade had jurisdiction to enter the injunction. At the time Chief Justice Moore issued his January 6, 2016, administrative order, the Eleventh Circuit Court of Appeals had already affirmed the injunction in Strawser. Therefore,' by ordering and directing the same probate judges who were bound by the Strawser injunction that they had a “ministerial duty not to issue any marriage license contrary to the Alabama Sanctity of Marriage Amendment or the Alabama Marriage Protection Act,” Chief Justice Moore clearly sought to interfere with the legal processes in the United States District Court and the Eleventh Circuit Court of Appeals. Furthermore, by issuing his order and prematurely deciding the effect of Obergefell on API I, Chief Justice Moore also interfered with a case pending in the Alabama Supreme Court. Consequently, we agree that “the evidence is clear and convincing that, by issuing the January 6, 2016, order Chief Justice Moore interfered with the legal process and remedies in the United States District Court and/or the Alabama Supreme Court available through ■ those courts to address the status of any proceeding to which Alabama’s probate judges were parties. In so' doing, Chief Justice Moore violated Canons 1, 2, 2A, 2B, and 3.” We affirm the judgment of the Court of the Judiciary as to Count V.
Count VI
Count VI charged:
“By taking legal positions- in his Administrative Order of January 6, 2016, on a matter pending before the Alabama Supreme Court in API, Chief Justice Roy S. Moore placed his impartiality into question.on those issues, thus disqualifying himself from further proceedings in that case; yet he participated .in further proceedings in API, after having disqualified himself by his actions, in violation of the following Alabama Canons of Judicial Ethics, separately and severally:
“a. Failed to uphold the integrity and independence of thé judiciary, Can- ‘ on 1;
“b. Failed to observe high standards of ’conduct so that the integrity and independence of the judiciary may be preserved, Canon 1;
“c. Failed to avoid impropriety and the appearance of impropriety, in all his activities, Canon 2;
“d. Failed to respect and comply with the law, Canon 2A;
“e. Failed to" conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, Canon 2A; ,
“f. Failed to avoid conduct prejudicial . to the administration of justice that brings the judicial office.into disrepute, Canon 2B; and/or ,
“g. Failed to perform the- duties of his office impartially and diligently, Canon 3.”
Chief Justice Moore initially argues that, as to Count VI, there was no verified complaint filed with the Judicial Inquiry Commission. This 'argument was not presented to the Court of the Judiciary for its consideration. Because jurisdictional issues may be raised at any time, to the extent this argument may impact the Judicial Inquiry Commission’s jurisdiction to investí- *478 gate the allegations set out in Count VI, we address it.
Initially, we note that Chief Justice Moore does not frame his argument in terms of a jurisdictional challenge; he argues only that the Judicial Inquiry Commission failed to follow its own procedures and that, therefore, Count VI must be dismissed. Chief Justice Moore does not challenge the validity of the verified complaint with regard to Counts I-V. Therefore, it is undisputed that Chief Justice Moore had adequate notice that his issuance of the January 6, 2016, administrative order was under investigation when he participated in and issued a writing in API II. The length and tone of his statement of nonrecusal indicates that he’ was clearly aware that his failure to recuse himself would be questioned. He was aware that the impact of the administrative order on the integrity and independence of the judiciary, the impropriety or appearance of impropriety of his actions, and whether he was conducting himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary were already being investigated. Because the investigation into whether Chief Justice Moore’s issuance of the January 6, 2016, administrative order necessitated his recusal in API II arises directly from the investigation into the impact of the issuance of the administrative order, the Judicial Inquiry Commission was not divested of jurisdiction- to engage in the investigation.
We now turn to Chief Justice Moore’s argument that the Judicial Inquiry Commission failed to afford him proper written notice of Count VI as required under Rule 6.C and Rule 6.D of the Rules of Procedure of the Judicial Inquiry Commission.
Rule 6.C and Rule 6.D provide, in pertinent part:
“C. If a complaint is not dismissed on preliminary review pursuant to Rule 6.B., the commission, within 14 days of its decision to conduct some investigation of the complaint, and in no event more than 84 days after a complaint is filed, shall serve upon the judge who is the subject of the complaint copies of the complaint and all other documents or other materials of any nature whatsoever constituting, supporting, or accompanying the complaint, or accumulated by the commission before such service upon the judge. Further, the commission shall advise the judge of those aspects of the complaint that it then considers worthy of some investigation.
“D. Every six weeks after serving the judge pursuant to- Rule 6.C., the commission shall serve on the judge being investigated copies of all materials of any nature whatsoever not already served upon him or her tending to establish that the conduct either did or did not occur or that the investigation is or is not still appropriate, and shall serve upon the judge a full statement of whether the commission intends to continue the investigation and any modification of the previous advice as to aspects of the complaint that it then deems worthy of some investigation. ...”
(Emphasis added.)
Regarding this argument, the Court of the Judiciary found:
“The JIC [Judicial Inquiry Commission] introduced evidence indicating that Chief Justice Moore actually was given an opportunity to address the charge at an April [7[8]] hearing before the JIC. At that April [7] hearing, in response to *479 questioning about his participation in API I, Chief Justice Moore distributed copies of his statement of nonrecusal in API II. The JIC also asserts:
“ ‘The requirements of due process— which are at the heart of the Chief Justice’s claim here — “are not necessarily the same as those in a criminal matter.” ... This is because the purpose of the disciplinary proceeding is “to protect the public interest” — not to punish the judge .... In fact, “the majority view holds that virtually no notice is required by the due process clause in investigatory proceedings. This view does not extend to adjudicative proceedings. Even there, though, due process demands only the amount of notice necessary to give a judge a general idea of the charges against him.” ... With this in mind, there is simply no question that the Chief Justice has been provided robust notice under the JIC Rules, above and beyond what the majority of jurisdictions require at the investigatory stage — and his own testimony at the April [7], 2016, hearing proves he had, at the very least, á general idea of the charges against him, if not specific knowledge of the [JIC’s] investigation into these matters.
“ ‘But ... even if ... Charge Six was not adequately noticed by the [JIC] — which the [JIC] does not concede — and even if formal notice and strict adherence to the JIC procedures is required — which it is not— the Chief Justice has not shown any prejudice by this lack of notice, as required by Rule 19 and the majority of jurisdictions.’
“We agree with the JIC. Chief Justice Moore had adequate notice of charge no. 6, and, even if he did not, he has not demonstrated prejudice — despite having multiple opportunities to do so — by any alleged lack of notice.”
Chief Justice Moore does not dispute that he attended the April- 7 hearing before the Judicial Inquiry Commission and that his nonrecusal in API II was a topic of discussion at that -hearing. Therefore, it does appear that Chief Justice Moore had notice that the Judicial Inquiry Commission- was investigating his nonrecusal ’in API II. Chief Justice Moore argues that the Judicial Inquiry Commission’s -“failure to follow its-own mandatory process regarding Count VI signaled to the Chief Justice that the issue was not a serious one.” (Chief Justice Moore’s brief, at 46-47.) We disagree. Rule 6.B allows the Judicial Inquiry Commission, after finding that a complaint is not worthy of investigation, to dismiss a complaint without ever notifying the judge being investigated of the filing of the complaint. The fact that the Judicial Inquiry Commission requested Chief Justice Moore to appear and to address questions related to his nonrecusal in API II, rather than summarily dismissing that portion of the investigation, denotes the importance of the issue.
Chief Justice Moore does not dispute that he failed to demonstrate that he suffered any harm pr prejudice from the Judicial Inquiry Commission’s failure to provide written notice of the aspect of its investigation leading to Count VI. Rather, he argues that he has no burden to demonstrate harm or prejudice.
The Judicial Inquiry Commission argues that Chief Justice Moore is required under Rule 19, Rules of Procedure of the Judicial Inquiry Commission, to demonstrate that he has been prejudiced or aggrieved by the alleged lack of notice. See In re Storie, 574 S.W.2d 369, 372 (Mo. 1978)(“Absent a showing of prejudice, respondent cannot complain of alleged irregularities in the informal notice.”); and McCartney v. Commission on Judicial Qualifications, 12 Cal.3d 512, 519, 526 P.2d 268, 273, 116 *480 Cal.Rptr. 260, 265 (1974) (“[N]oticé< to the judge under investigation as to the nature of the complaints against him is not compelled as a matter of due process, ... Hence, relief from the deleterious effect, if any, of the Commission’s failure to follow rule 904(b) may be secured by petitioner only upon a showing of actual prejudice.” (citing Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960))). (Judicial Inquiry Commission’s brief, at 74.) Chief Justice Moore offers no legal argument in rebuttal, .and we find the Judicial Inquiry Commission’s argument persuasive.
Chief Justice Moore complains that he did not have sufficient notice during only the investigatory phase, not the adjudication phase. “[W]hen governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary’ that the full panoply of judicial procedures be used.” Hannah v. Larche, 363 U.S. at 442. Chief Justice Moore does not allege that the failure to provide written notice prevented him from offering evidence or rebutting evidence that would have prevented the filing, of a formal charge with the Court of the Judiciary. In fact, Chief Justice Moore did provide rebuttal evidence during the April 7, 2016, hearing in the form of his statement of nonrecusal in API II. Without more, we cannot conclude that Chief Justice Moore was “aggrieved” by the Judicial Inquiry ■ Commission’s failure -to provide written notice of the investigation regarding the administrative order-and Chief Justice Moore’s participation in API II.
With regal'd to the merits- of Count VI, Chief Justice Moore argues that he did not take a position as to the effect of Obergefell on API I in his January 6, 2016, administrative order. Further, he says that he stated specifically in his administrative order that he could not- give any guidance to the probate judges.
The Court of the Judiciary found:
“Chief Justice Moore in fact took legal positions in the January 6, 2016, order on a matter pending before the Alabama Supreme Court — -namely, he stated that the ‘existing orders’ of the Alabama Supreme Court remained in effect until vacated by the Alabama Supreme Court, and he argued that Obergefell bound (or might only bind) the parties to it but no one else.
“As the JIC [Judicial Inquiry Commission] points out:
“‘[T]he Chief Justice’s guilt here is self-evident upon a simple comparison that reveals that significant portions of his January 6th Order are actually just copied and pasted verbatim into his subsequent — and substantive — legal opinion in API II.
[[Image here]]
“ ‘... Considering that the substantive legal content of his API II concurrence is identical to the language in his January 6th Order, the Chief Justice’s assertion that his January 6th Order somehow does not also address substantive legal issues is plainly disingenuous and transparent.’
“Further, we agree with the JIC’s argument that;, under an objective standard, Chief Justice Moore’s decision to issue the January 6, 2016, order was a decision to make a public comment about a pending proceeding in his own Court, thereby placing his impartiality into question, See Canon 3A(6), Canons of Jud. Ethics (‘A judge should abstain *481 from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control.’). Thus, under an objective standard, by virtue of the issuance of the January 6, 2016, order, Chief justice Moore was disqualified from additional participation in API II.
“In his statement of nonrecusal in API II, Chief Justice Moore asserted:
‘“The effect of Obergefell on this Court’s writ of mandamus ordering that the probate judges are bound to issue marriage licenses in conformity with Alabama law is a new issue before this Court. ...
[[Image here]]
‘“In joining this case to consider the effect of Obergefell, I am not sitting in review of [the January 6, 2016,] order, nor have I made any public statement on the effect of Obergefell .on this Court’s opinion and order of March 3,2015.’
“As noted above, in the January 6, 2016, order, Chief Justice Moore, in fact, took legal positions on the effect of Obergefell, and that order was, in fact, a public comment on the issue. And, as noted above, he copied and pasted substantial portions of those legal positions and public comment into his special concurrence in API' II. Accordingly, this court finds that the evidence is clear and convincing that Chief Justice Moore is guilty of charge no. 6.”
We agree. “Recusal is required under Canon 3C(1) when ‘facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge.’ ” In re Sheffield, 465 So.2d 350, 355-56 (Ala. 1984)(quoting Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala. 1982)). ‘““[T]he Canon 3(C) test is: ‘Would a person of ordinary prudence in the judge’s position knowing all the facts known to the judge find that there is a reasonable basis for questioning the judge’s impartiality?’ The question is not whether, the judge was impartial in fact, but whether another person, knowing all the circumstances, might reasonably question the judge’s.impartiality — -whether there is an appearance of impropriety.” ’ ” Ex parte Monsanto Co., 862 So.2d 595, 605 (Ala. 2003)(quoting Ex parte City of Dothan Pers. Bd., 831 So.2d 1, 5 (Ala. 2002), quoting in turn Ex parte Duncan, 638 So.2d 1332, 1334 (Ala. 1994)).
The January 6, 2016, administrative order was completely silent as to relevant federal-court injunctions and as to the true effect of -Obergefell on API I. Chief justice Moore chose to include'only that legal analysis leading to his' ultimate conclusion that Obergefell ' had no effect on the Court’s decision in API I. Despite Chief Justice Moore’s including qualifying language in his administrative order, there is no question that he concluded that Oberge-fell had no effect and that he correspondingly ordered and directed that the “probate judgés have a ministerial duty not to issue any marriage license contrary to the Alabama Sanctity of Marriage Amendment or the Alabama Marriage Protection Act.” Having made such a'decision and having issued such an order, Chief Justice Moore was ethically obligated to recuse himself from participation in API II, which involved thé sole issue of the effect, if any, of Obergefell on API I. Because Chief Justice Moore had already decided the pivotal legal question-at issue in API II, there can be no question that a-person of ordinary prudence would- or could question • Chief Justice Moore’s impartiality in API II.
By participating in API II, Chief Justice Moore failed to uphold the integrity and independence of the judiciary, failed to observe high standards of conduct so that the integrity and independence of the judi *482 ciary may be preserved, failed to avoid impropriety and the appearance of impropriety, failed to respect and to comply with the law, failed to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, failed to avoid conduct prejudicial to the administration of justice that brings the judicial office into disrepute, and failed to perform the duties of his office impartially and diligently. We, therefore, affirm the judgment of the Court of the Judiciary as to Count VI,
III.
Chief Justice Moore argues that the Court of Judiciary committed reversible error by improperly considering the 2003 opinion of Court of the Judiciary removing him from office and the 2004 Alabama Supreme Court opinion affirming that removal.[9] The Court of the Judiciary admitted those exhibits for the limited purposes for which they were offered by the Judicial Inquiry Commission, which were (1) to determine the appropriate sanction, and (2) as evidence that Chief Justice Moore had notice of the potentially damaging effect of his January 6, 2016, administrative order. Despite the limited purposes for which those exhibits were admitted pursuant to Rule 404, Ala. R. Evid., Chief Justice Moore contends that the Court of the Judiciary considered those exhibits as evidence of his guilt. (Chief Justice Moore’s brief, at 74-82.)
Rule 404 provides, in pertinent part:[10]
“(a) Character Evidence Generally. Evidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion ....
“(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ....”
(Emphasis added.)
Chief Justice Moore argues that the following portion of the Court of the Judiciary’s opinion demonstrates that court’s improper use of his 2003 removal from office:
“Chief Justice Moore’s arguments that his actions and words mean something other than what they clearly express is not a new strategy. In 2003, this court’s order removing Chief Justice Moore quoted the following testimony from him before the JIC [Judicial Inquiry Commission]:
“ T did what I did because I upheld my oath. And that’s what I did, so I have no apologies for it. I would do it again. I didn’t say I would defy the court order. I said I wouldn’t move the monument. And I didn’t move the monument, which you can take as you will.’
“Just as Chief Justice Moore’s decision that he “wouldn’t move the monument’ was, in fact, defiance of the federal court order binding him, a disinterested reasonable observer, fully informed of all the relevant facts, would conclude that the undeniable *483 consequence of the January 6, 2016, order was -to- order and direct the probate-judges to deny marriage licenses in direct defiance of the decision of the United States Supreme Court in Obergefell and the Strawser injunction.”
The Judicial Inquiry Commission argues that this language appears because the Court of the Judiciary must decide guilt and, if warranted, impose a sanction in the same opinion. The Judicial Inquiry Commission maintains that nothing indicates that the above-quoted language was not part of the Court of the Judiciary’s determination as to the severity of the sanction to be imposed.
We disagree with the Judicial Inquiry Commission’s interpretation of the above-quoted text. The Court of the Judiciary devoted a separate section of its opinion to determining the appropriate sanction. In that section, the Court of the Judiciary does reference Chief Justice Moore’s 2003 removal from office and considers that removal in determining the appropriate sanction to impose in this case. Because the references to the 2003 removal also appear in the adjudication portion of the Court of the Judiciary’s opinion, we cannot conclude that that court considered Chief Justice Moore’s 2003 removal solely for the purpose of imposing a sanction.
However, we also disagree with Chief Justice Moore’s interpretation of the above-quoted text. The language quoted above was but one portion of a long discussion as to why that court disagreed with Chief Justice Moore’s testimony that his January 6, 2016, administrative order was merely a “status update.”
Based on the full context of the portion of the Court of the Judiciary’s opinion quoted by Chief Justice Moore, we conclude that the Court of the Judiciary relied on a passage from a previous opinion of that court to demonstrate that Chief Justice Moore had knowledge, Le., that he knew or should have known, that his January 6, 2016, administrative order would be interpreted as a directive to disobey Obergefell and the binding Strawser injunction, not as a mere status update. For that limited purpose, the Court of the Judiciary’s consideration of its previous opinion involving Chief Justice Moore is permissible under Rule 404(b).
Chief Justice Moore further argues the Court of the Judiciary impermissibly considered his 2003 removal from office,, as evidenced by the following passage:
“Chief Justice Moore recognized the holding and validity of Cooper[11] in 2003, when he argued then that his case was distinguishable from Cooper. Chief Justice Moore’s understanding of Cooper — as evidenced by his arguments in 2003 — means that he could not have actually thought 'that Obergefell bound only the parties to that case. Thus, we agree with the [Judicial Inquiry Commission’s] contention that Chief Justice Moore is disingenuous in his suggestion in the January 6, 2016, order that ‘recent developments of potential relevance since Obergefell may impact’ whether Obergefell abrogated API.”
This passage, like the previous one cited by Chief Justice Moore, appears in the Court of the Judiciary’s 10-page discussion as to whether the. January 6, 2016, administrative order could be deemed .a “status update.” Before the passage quoted above, the Court of the Judiciary included a lengthy quote from Cooper v. Aaron, 358 U.S. 1, 78 S.Ct 1401, 3 L.Ed.2d 5 (1958), that explains that, once the United States Supreme Court interprets a provision of the Constitution, that interpretation is *484 binding on all states, not just those party to the decision. Cooper, 358 U.S. at 17-19, 78 S.Ct. 1401. The Court of the Judiciary cited materials relating to Chief Justice Moore’s 2003 removal from office for the purpose of establishing that Chief Justice Moore was aware of or had knowledge of the Cooper decision and specifically of the binding nature of the United States Supreme Court’s rulings as to the interpretation of Constitutional provisions. As stated above, evidénce of prior acts is admissible for the purpose of establishing knowledge.[12]
Nothing in the Court of the Judiciary’s opinion indicates that the court improperly considered Chief Justice Moore’s 2003 removal from office as evidence of his character or a trait of character or that in issuing the January 6, 2016, administrative order he acted in conformity therewith.
IV.
Chief Justice Moore also contends that Art. VI, § 159, Ala. Const. 1901, violates his due-process rights enumerated in the Fourteenth Amendment of the United, States Constitution by immediately disqualifying a judge “from acting as a judge, without loss of salary, while there is pending, ,,. a complaint against him filed by the judicial inquiry commission with the court of the judiciary.” The Judicial Inquiry Commission argues that this issue was not preserved for appeal because Chief Justice Moore failed to brief the issue before the Court' of the Judiciary.
“If a party makes a constitutional argument to the trial court before a decision in the case is-rendered, the constitutional issue is preserved for appellate review. See Alabama Power Co. v. Capps, 519 So.2d 1328, 1330 (Ala. 1988)(holding that if a party raises a constitutional issue ‘at the pleading stage, during the taking of the evidence, or even during the instructions to the jury, the trial court [is] presented with the constitutional arguments ..., and if it had accepted the argument, could have saved the time and expense of trial under the allegedly unconstitutional [statute]’),” .
Ex parte J.W.B., 230 So.3d 783, 790 (Ala. 2016).
Chief Justice Moore raised this issue, with particularity, in his answer. The Court of the Judiciary addressed this issue in its opinion. For these reasons, this issue is properly before this Court.
The Judicial Inquiry Commission also argues in a single footnote that this issue was rendered moot when the temporary suspension with pay under § 159 terminated upon the Court of the Judiciary’s determination of Chief Justice Moore’s guilt and the imposition of sanctions. See Troiano v. Supervisor of Elections in Palm Beach Cty., Fla., 382 F.3d 1276, 1282 (11th Cir. 2004)(“[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.”). We-first note that whether an issue is moot can rarely be adequately argued in a single footnote. Indeed, the Judicial Inquiry Commission addresses only one aspect of mootness.
In this instance, the controversy over § 159 is at an end for Chief Justice Moore. There is no action or remedy this Court may provide. Pursuant to § 159, Chief Justice Moore was automatically suspended upon the filing, of a complaint with the Court of the Judiciary, which prohibited him from performing his job duties. During that period, however, he retained his salary, his retirement benefits, and all *485 other benefits of his office, pending the outcome of his trial. Chief Justice Moore’s inability to perform his job duties during that time is not something this Court can remedy at this juncture. Because he is suspended for the remainder of his term and because he is also prohibited from running for public office as a judge in the future because of his age, the provisions of § 159 will no longer apply to him. In these respects, Chief Justice Moore’s argument with regard to § 159 is moot. However, despite the Judicial Inquiry Commission’s contention, that is not the end of the analysis.
“ ‘Alabama courts do not give opinions in which there is no longer a justiciable controversy; yet, Alabama has recognized two exceptions to the mootness doctrine: questions of great public interest and questions that are likely of repetition of the situation.’ ”
Underwood v. Alabama State Bd. of Educ., 39 So.3d 120, 127 (Ala. 2009). We now turn to whether this issue of the automatic suspension provided in § 159 is a question of great public importance.
“‘The criteria for applying the public interest exception to the mootness doctrine include the. public nature of the question, the desirability of an authoritative determination for the purpose of guiding public officers, and the likelihood that the question will generally recur.’ However, this ‘exception is construed narrowly ... and a clear showing of each criterion is required to bring a case within its terms.’ ”
Chapman v. Gooden, 974 So.2d 972, 989 (Ala. 2007)(internal citations omitted). Here, both criteria are met.
The issue raised has the potential to affect publicly elected judges in the State of Alabama. The Judicial Inquiry Commission, unfortunately, has had cause to file formal charges with the Court of the Judiciary on numerous occasions before it filed the charges against Chief Justice Moore and, unfortunately, will continue to have occasion to file formal charges against sitting judges. Therefore, there exists á “desirability of an authoritative determination for the purpose of guiding public officers,” ánd there exists “the likelihood that the question will generally recur.” For' these reasons, we1 address this issue.
“ ‘[Procedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one’s life, liberty, or property interests are about to be affected by governmental action.’ Brown’s Ferry Waste Disposal Ctr., Inc. v. Trent, 611 So.2d 226, 228 (Ala. 1992); see also Carter v. City of Haleyville, 669 So.2d 812 (Ala. 1995). The United States Supreme Court has held that a procedural-due-process violation that is potentially actionable is not complete when the • deprivation takes place; such a violation does not occur ‘unless and until the State fails to provide due process.’ Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). In Zinermon, the Supreme Court noted that ‘[procedural due process rules are méant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.’ 494 U.S. at 125-26, 110 S.Ct. 975, 108 L.Ed.2d 100 (quoting Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)).”
City of Orange Beach v. Duggan, 788 So.2d 146, 151 (Ala. 2000).
Chief Justice Moore asserts he has a vested property interest in holding the office of Chief; Justice. The Judicial Inquiry .Commission disputes that assertion, arguing instead that a public office is not provided for the benefit of the office *486 holder but as a public necessity. We need not reach that issue, however, because we conclude that whether Chief Justice Moore has a vested property interest in his office, adequate due process was provided.
“The Supreme Court held that tenured government employees almost always must be afforded at least a limited pre-termination hearing before they can be constitutionally terminated. [Cleveland Bd. of Educ. v. Loudermill,] 470 U.S. [532,] at 542-43, 105 S.Ct. 1487 [(1985)]. The Supreme Court, however, held that the pretermination hearing need not be elaborate and need not be a full eviden-tiary hearing. Id. at 545, 105 S.Ct. 1487. The Supreme Court reasoned that the purpose of a pretermination hearing is not to ‘definitively resolve the propriety of the discharge,’ but, rather, to ‘be an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.’ Id. at 545-46, 105 S.Ct. 1487. The Supreme Court also noted that under state law the terminated government employee was later entitled to a full and adequate administrative post-termination hearing and judicial review. Id. at 545, 105 S.Ct. 1487. Therefore, the Supreme Court concluded that under federal procedural-due-process law all that is required in a pretermination hearing is ‘oral or written notice of the charges against [the employee], an explanation of the employer’s evidence, and an opportunity [for the employee] to present his side of the story.’ Id at 546, 105 S.Ct. 1487. The Supreme Court then stated that ‘[t]o require more than this prior to termination would intrude to an unwarranted extent on the government’s interest in quickly removing an unsatisfactory employee.’ Id.”
City of Orange Beach, 788 So.2d at 152. Even when an employee has a vested property interest in his or her job, due process requires only a pre-termination hearing.
Rule 6.C and Rule 6.D, Rules of Procedure of the Judicial Inquiry Commission, require that any judge under investigation be given a copy of the verified complaint asserted against him or her and a copy of any materials in support of that complaint, along with notice of those issues the Judicial Inquiry Commission finds worthy of investigation. The judge under investigation is also entitled to an update as to the progress of the investigation every six weeks until the complaint is dismissed or formal charges are filed with the Court of the Judiciary. Further, if the investigation culminates in formal charges, those charges must be filed in the nature of a complaint with the Court of the Judiciary. That complaint must state “in plain and concise language the charges against the judge and the allegations of fact upon which such charges are based.” Rule 3, Rules of Procedure for the Alabama Court of the Judiciary. Therefore, the rules governing the investigation and the rules governing the pre-discipline hearing provide an accused judge with ample notice of the charges against him or her.
The trial held by the Court of the Judiciary affords an accused judge of ample opportunity to hear and to challenge the Judicial Inquiry Commission’s evidence and to present his or her “side of the story.” Notice and the ability to respond are all that are required in a pre-termi-nation/pre-disciplinary hearing.
Chief Justice Moore challenges his suspension with pay pending the outcome of his pre-disciplinary hearing. However, “in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can *487 avoid the problem by suspending with pay.” Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 544-45, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
The legislature that drafted § 159, and the people of Alabama, who ratified § 159, were justified in so doing to protect the orderly administration of justice. The people of Alabama, subject to the jurisdiction of a duly elected judge, must be free to lodge complaints against a judge who they believe may be in violation of the Canons of Judicial Ethics. If that complaint is deemed to have merit and formal charges are brought, the complaining individuals, who may still have matters pending before that judge, must be protected from retaliation — real or imagined. Furthermore, the government has a vested interest in protecting the integrity of the administration of justice so that immediately removing the charged judge who may indeed be violating the Canons of Judicial Ethics is desirable and necessary. Therefore, suspending such a judge with pay pending the outcome of a disciplinary hearing does not deprive that judge of due process. Therefore, no reversible error occurred as to this issue.
V.
Chief Justice Moore argues that the Court of the Judiciary erred by failing to dismiss all the charges against him because, he says, the Judicial Inquiry Commission violated the confidentiality provisions of Rule 5, Rules of Procedure of the Judicial Inquiry Commission.
With regard to this issue, the Court of the Judiciary held:
“According to an affidavit from Mat Staver, one of Chief Justice Moore’s counsel in these proceedings and one of the counsel of record for the petitioners in API, Staver received a telephone call from a reporter at the New York Times on May 5, 2016, indicating that the reporter’s ‘sources’ had .told him that the JIC [Judicial Inquiry Commission] would be filing a complaint as early as May 5 or May 6. Citing the requirements that all proceedings before the JIC are to be confidential, see, e.g., § 156, Ala. Const. 1901 (Off. Recomp.), and Rule 5, Ala. R.P. Jud. Inq. Comm’n, Chief Justice Moore maintains that this telephone call from a .reporter the day before the charges were filed in this court indicates that the JIC breached its duty of confidentiality. Chief Justice Moore asks this court to find that the JIC breached its duty of confidentiality,, and, as a remedy, he seeks dismissal of the charges against him. Although Chief Justice Moore contends that the JIC is the only possible ‘source’ of the information alleged to have been disclosed, no evidence was offered during the hearing identifying the. reporter’s ‘source.’ Thus, to conclude that the JIC was the ‘source’ would require this court to speculate, and we decline to do so,”
The Court of the Judiciary also noted that in support of his argument Chief Justice Moore offered an article from the Montgomery Advertiser, which also alleged that an unnamed source had indicated that charges would be filed against Chief Justice Moore. We agree with the Court of the Judiciary that, without more evidence, a resolution of this issue requires speculation on the part of the Court. Because no evidence was presented as to who the “source” might be, we see no error in the Court of the Judiciary’s declining to grant relief on this basis. We 'affirm the judgment of the Court of the Judiciary as to this issue.
VI.
Chief Justice Moore argues that, by suspending him for the remainder of his term, effectively removing- him from office, the Court of the Judiciary violated Rule 16, Rules of Procedure of the Ala *488 bama Court of the Judiciary, which provides:
“With respect to all matters other than removal from office, the Court shall convict only with the concurrence of no fewer than six of its nine members. With respect to removal from office, the Court ..shall convict only with the concurrence of all members sitting.”
The Judicial Inquiry Commission, quoting Boggan v. Judicial Inquiry Commission, 759 So.2d 550, 555 (Ala. 1999), argues that this Court “ ‘has repeatedly held that when itTeviews the record of the proceedings of the Court of the Judiciary on the law and the facts, if the records shows by clear .and convincing evidence that the charge or charges have been committed, then this Court does not have the authority to reduce or reject the sanction imposed by the Court of the Judiciary.’ ”
This Court is obligated to follow prior precedent holding-that, assuming the charges below were proven by clear and convincing evidence, this Court has no authority to-disturb the sanction imposed by the Court of the Judiciary. See also Hayes v. Alabama Court of the Judiciary, 437 So.2d 1276, 1279 (Ala. 1983); Powers v. Judicial Inquiry Comm’n, 434 So.2d 745 (Ala. 1983); and In re Samford, 352 So.2d 1126 (Ala. 1977). In so doing, this Court notes that, although only a majority of the Court of Judiciary agreed that removal from office was the appropriate sanction in this case, the Court of-the Judiciary unanimously suspended Chief Justice Moore for the remainder.of his term. Presumably, the Court of the Judiciary was aware that the suspension was in excess of two years, because it is common knowledge that an appellate judge’s term of office is six years and the Court of the Judiciary stated in note 2 of- its opinion that Chief Justice Moore took office in January 2013. The Court of the Judiciary was also presumably aware that such a suspension would preclude Chief Justice Moore from reassuming his duties at any point before the expiration of his term .but unanimously agreed that such a suspension was warranted. Even though both sanctions are similarly severe, because the Court of the Judiciary was unanimous in its imposition of such a serious sanction, we cannot conclude that the Court of the Judiciary violated Rule 16 of the Rules of Procedure of the Alabama Court of the Judiciary.
Chief Justice Moore also argues his suspension (2 years, 3 months, and 14 days) is four times longer than any suspension imposed on any other judge since the revision of Rule 16 in 2001. However, Chief Justice Moore fails to offer the Court examples, of comparable offenses. Chief Justice Moore does not argue that other similarly situated judges have received lesser suspensions.
Because we have previously determined that the charges were proven by clear and convincing evidence and there is no indication that-the sanction imposed was plainly and palpably wrong, manifestly unjust, or without supporting evidence, we shall not disturb the sanction imposed.
Conclusion
For the reasons stated above, we affirm the judgment of the Court of the Judiciary in all respects,
AFFIRMED.
James Harvey Reid, Jr., Special Chief Justice, and Robert George Cahill, William Reddoch King, Lynn Clardy Bright, Ralph Alton Ferguson, Jr., and John David Coggin, Special Justices, concur.
Harris Edward McFerrin, Special Justice, concurs in the result.

. Section 157(b), Ala. Const. 1901 (Off. Re-comp.), provides that "[a] judge aggrieved by a decision of the Court of the Judiciary may appeal to the Supreme Court.” Following the filing of the notice of appeal in this case on October 3, 2016, the members of the Alabama Supreme Court acknowledged that Canon 3 of the Alabama Canons of Judicial Ethics required their recusal from consideration of this appeal. In an order dated October 24, 2016, the Court, pursuant to § 149 and § 161(h), Ala. Const. 1901 (Off. Recomp.), and Ala. Code 1975, § 12-2-14, authorized "the Acting Chief Justice to participate with the Governor in causing the names of 50 judges to be drawn at random from a pool of all retired appellate justices and judges, retired circuit court judges, and retired district court judges, who are members of the Alabama State Bar, capable of service, and residents of the State of Alabama.” The order further provided that "the first 7 judges shall constitute the special Supreme Court that will hear Chief Justice Moore’s appeal. In the event any judge so selected is not willing and able to serve, then that judge's place shall be filled by the next judge on that list in order of selection who is willing and able to serve, until seven judges willing and able to serve have been selected. The names of such judges shall then be certified to the Governor.” The drawing took place on October 27, 2016. On October 31, 2016, in compliance with the random-selection procedure, then Governor Robert Bentley appointed the following seven judges to serve as the special Supreme Court of Alabama in case no. 1160002, Roy S. Moore, Chief Justice of the Supreme Court of Alabama v. Alabama Judicial Inquiry Commission: the Honorable James Harvey Reid, Jr., of Baldwin County, Special Chief Justice; the Honorable Harris Edward McFerrin of Butler County; the Honorable Robert George Cahill of Jefferson County; the Honorable William Reddoch King of Crenshaw County; the Honorable Lynn Clardy Bright of Montgomery County; the Honorable Ralph Alton Ferguson, Jr., of Jefferson County; and the Honorable John David Coggin of Cherokee County, Special Associate Justices. Also on October 31, 2016, prior to her recusal, Acting Chief Justice Lyn Stuart, to the extent she retained the authority to do so, also appointed the same seven judges as previously appointed by Governor Bentley.

. Chief Justice Moore was elected Chief Justice in November 2012 and assumed office in January 2013, for a six-year term that expires in January 2019.

. The Chief Justice of the Alabama Supreme Court is also the administrative head of the Alabama Administrative Office of Courts. Ala. Const. 1901, § 149 (Off. Recomp.),

. The copy of the memorandum included in the record on appeal is partially redacted.

. The copy of the memorandum included in the record on appeal is partially redacted.

. A printed copy of the article wás attached to the memorandum.

. The probate judges' filing on -July 7, 2015, was in opposition to a motion to make Judge Granade’s injunction a permanent injunction. Their argument was that because the issue was settled, there was no longer a need for a permanent injunction,

. The Court of the Judiciary states the investigatory hearing before the Judicial Inquiry Commission took place on April 17, 2016, but the record reflects that hearing took place on April 7, 2016.

. At trial, Chief Justice Moore objected to the admissibility of evidence involving his removal from office in 2003, but on appeal he challenges only the manner in which the evidence was considered.

. The Alabama Rules of Civil Procedure and the Alabama Rules of Evidence govern proceedings in the Court of the Judiciary. See Rule 10, Rules of Procedure for the Alabama Court of the Judiciary.

. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).

. The Judicial Inquiry Commission uses the term "notice.” We note that the list of permissible purposes under Rule 404(b) is not an exhaustive list and that, in this context of this case, notice and .knowledge are synonymous.